747 So.2d 1021 (1999)
Ernesto DIAZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 99-339.
District Court of Appeal of Florida, Third District.
December 15, 1999.
*1022 Bennett Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Regine Monestime, Assistant Attorney General, for appellee.
Before NESBITT, COPE and SORONDO, JJ.
SORONDO, J.
Ernesto Diaz (defendant), appeals from a final judgment of guilt of second degree murder and thirty year sentence.
The defendant was charged by information with the second degree murder of Julio Rojas. Before trial, the state moved in limine to preclude the defense from arguing that the victim had a blood alcohol level of .21 at the time he was stabbed, unless the defendant presented evidence that he knew the victim was intoxicated. The defense responded that all of the witnesses would testify that the victim was intoxicated and that he had a reputation for being violent when drunk; that the victim was the aggressor and that the defendant reacted in self-defense. The court granted the state's motion but gave the defense the right to renew the issue during trial.
Luis Guerro, Luis Castro, the defendant, and the victim were at a gas station. Defendant went to buy beer. When he returned, each individual took one of the beers. Having consumed his first beer, the victim reached for his second. As he did, the defendant said, "are you going to drink them all little girl?" The victim responded that he was a man and threw the empty beer bottle at the defendant. A struggle ensued but the men were ultimately separated. Guerro and Castro testified that several minutes passed during which the men returned to their places and remained calm. Thereafter, the defendant approached the victim with a switchblade. Castro testified that the defendant stabbed the victim, then threatened to throw the knife at him (Castro). Guerro and the defendant then left.
During cross-examination, Guerro testified that the victim was a problematic individual and had a reputation for violence when drunk. Castro testified that the defendant and the victim had been drinking and that the latter became obnoxious when drunk.
*1023 Dr. Michael Bell testified that the victim's death was caused by a stab wound to the abdomen. At the end of Dr. Bell's direct examination, defense counsel renewed his request to be allowed to inquire about the results of the victim's toxicology report. The motion was denied.
The defendant testified that he knew that the victim had a reputation for violence. He stated that after the victim threw the beer bottle at him, the victim approached him with a red crate, and, fearing for his life, he "hit" the victim with the knife.
Dr. Bell testified on behalf of the defense that the toxicology evaluation performed during the autopsy showed that the victim had a blood alcohol level of .21 at the time of death.
Before closing, defense counsel renewed his objection to the limitation of Dr. Bell's cross-examination during the state's case and argued that he should not be forced to give up the right to have the opening and closing portions of closing argument. The trial court denied the motion. The jury found the defendant guilty as charged.
The defendant argues that the trial court reversibly erred when it improperly denied him the right to cross-examine the medical examiner on the issue of the victim's blood alcohol level, which resulted in his having to call the medical examiner in his own case thus forcing him to waive his right to initial and rebuttal closing arguments. We disagree.
In Steinhorst v. State, 412 So.2d 332 (Fla.1982), the Florida Supreme Court stated:
The proper purposes of cross-examination are: (1) to weaken, test, or demonstrate the impossibility of the testimony of the witness on direct-examination and, (2) to impeach the credibility of the witness, which may involve, among other things, showing his possible interest in the outcome of the case. Therefore it is held that questions on cross-examination must either relate to credibility or be germane to the matters brought out on direct examination. If the defendant seeks to elicit testimony from an adverse witness which goes beyond the scope encompassed by the testimony of the witness on direct-examination, other than matters going to credibility, he must make the witness his own.

Id. at 337 (citations omitted)(emphasis added). The case law in this area is clear that "[a]lthough wide latitude is permitted on cross-examination in a criminal trial, its scope and limitation lies within the sound discretion of the trial court and is not subject to review except for a clear abuse of discretion." Tompkins v. State, 502 So.2d 415, 419 (Fla.1986); see also Moore v. State, 701 So.2d 545 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998); Sireci v. State, 399 So.2d 964 (Fla.1981).[1] The limitation of cross-examination is therefore subject to appellate review under an abuse of discretion standard. See Moore, 701 So.2d at 549.
During the state's examination of the medical examiner who performed the autopsy on the victim, the prosecutor asked the witness to explain his internal examination of the body. The witness explained what was entailed and mentioned that blood and other fluids were drawn "for toxicology." The doctor then gave a lengthy explanation about his findings and conclusions but did not testify regarding the toxicology testing or results.
Before beginning his cross-examination, defense counsel argued that the state had opened the door to the toxicology results because the medical examiner had *1024 mentioned toxicological testing. Specifically, counsel said:
The point is everything the doctor does in an autopsy, I believe, is subject to cross-examination. He mentioned that he does the toxicology, and I should be allowed to ask about that, just like I would be able to ask about a cut on the guy's hand if I thought it was important. That's why I believe that I should be allowed to ask it at this point.
The trial judge correctly ruled that the results of the toxicological examination were not relevant at that time. The victim's blood alcohol level was absolutely irrelevant to the medical examiner's testimony, the sole purpose of which was to establish that the cause of death was a knife wound to the victim's abdomen. Moreover, counsel's suggestion that all aspects of an autopsy are fair game for cross-examination is incorrect. First, the results of an autopsy are subject to the relevancy provisions of Florida's Evidence Code. Thus, for example, if the autopsy revealed that the deceased suffered from syphilis or AIDS, and such findings were irrelevant to the trial of the case, those results would clearly be excludable. Second, autopsy findings like all other evidence, even if relevant, are subject to the balancing test of section 90.403, Florida Statutes (1997). Accordingly, if the trial court concluded that the marginal relevance of particular findings were outweighed by their potential for unfair prejudice, it could also exclude them. See Hayes v. State, 660 So.2d 257, 261 (Fla. 1995); State v. McClain, 525 So.2d 420 (Fla.1988); Beckett v. State, 730 So.2d 809, 811 (Fla. 4th DCA 1999). Finally, if certain autopsy results would tend to confuse the issues in the case, the trial court would also be justified in excluding them. For example, if the medical examiner testified that the victim died as a result of a bullet wound to the head, the fact that the autopsy revealed a malignant tumor on the victim's liver could be excludable on the grounds that it would lead to a confusion of the issue of the actual cause of death. Needless to say, such matters can only be decided on a case by case basis and we do not suggest that such evidence is per se inadmissible.
We agree with the trial court's conclusion that the subject defense counsel wished to pursue on cross-examination was outside the proper scope of cross-examination and was instead directed to the establishment of a defense. See Penn v. State, 574 So.2d 1079, 1083 (Fla.1991)("The statements Penn's counsel tried to introduce went beyond the scope of direct examination and would have tended to bolster Penn's theory of defense that he was too intoxicated by drugs to know what he was doing. This theory was clearly a defensive matter, and Penn could and should have developed it by calling his own witnesses."); Paul v. State, 574 So.2d 1194, 1194 (Fla. 3d DCA 1991)(Proper for trial court to restrict defendant's cross-examination that "went beyond the scope of direct examination and would have tended to bolster his defense theory. As the theory was a defensive matter, Paul should have developed it by calling his own witness."). Here, the issue of the victim's intoxication was relevant only to the defendant's defense of self-defense.
During his case-in-chief, the defendant testified that he knew that the victim had a reputation for violence when intoxicated. The obvious purpose of this testimony was to establish the reasonableness of his response to the victim's alleged aggression. The medical examiner's toxicological findings served only to confirm the defendant's perception that the victim was, in fact, intoxicated. However, whether or not the victim was actually "intoxicated" bolsters but does not establish the self-defense argument because it is not the fact of the victim's intoxication but the defendant's perception of it, in conjunction with his knowledge of the victim's reputation for violence when intoxicated, that establishes the desired element of the defense. Even without the medical examiner's testimony, *1025 the defendant's testimony would have compelled a reading of the self-defense instruction. On the other hand, the toxicological results, without the defendant's testimony, would have been irrelevant. Therefore, the trial judge did not abuse his discretion in limiting the defendant's cross-examination of the medical examiner.
We are compelled to observe that but for the existence of Rule 3.250 of the Florida Rules of Criminal Procedure the scope of cross-examination issue presented in this case would not exist.[2] The defendant in this case was not denied the right to present the desired testimony to the jury. The truth finding process was not compromised. The defendant complains that because, in his view, his right to cross-examine the witness in question on the subject of the results of the toxicology testing was improperly denied, he was improperly forced to call the witness as his own and consequently lost the right to have the closing summation guaranteed by Rule 3.250 to the criminal defendant who presents no evidence other than his own testimony.[3] Although not necessary to the resolution of this case, we take a moment to discuss this rule and its effects.
At common law, the rule was that because the prosecution bore the burden of proof, it should have the right to open and close during summation in criminal cases. See Faulk v. State, 104 So.2d 519 (Fla. 1958).[4] Presently in the United States, forty-six states, the District of Columbia and all United States District Courts allow the prosecution to close the final arguments in criminal cases.[5] Florida is one of only four states that have a rule which provides the criminal defendant the right to close final arguments where the defendant presents no evidence other than his own testimony. For the reasons which follow, we respectfully suggest that the time has come for our Supreme Court to revisit the wisdom of this provision.
First, as was the case in the common law, it seems only fair that the party bearing the burden of proof should enjoy the privilege of making the final argument to the jury. Florida has accepted this rationale in civil cases where the plaintiff, who has the burden of proof, is allowed to open and close during final arguments. See City of Ft. Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 652 (Fla.1975); Gardner Lumber Co. v. Bank of Commerce, 73 Fla. 246, 74 So. 313 (1917); Einstein v. Munnerlyn, 32 Fla. 381, 13 So. 926 (1893).
Second, Florida appellate courts have acknowledged that the purpose of our adversarial system is to enhance the search for truth. See Allstate Ins. Co. v. Boecher, 733 So.2d 993, 995 (Fla.1999)("Only when all relevant facts are before the judge and jury can the `search for truth and justice' be accomplished."(Emphasis in original)); *1026 Dodson v. Persell, 390 So.2d 704, 707 (Fla. 1980); D'Auria v. Allstate Ins. Co., 673 So.2d 147, 147 (Fla. 5th DCA 1996)(Antoon, J., concurring)("Trial judges have the important responsibility of ensuring that trials maintain their function as forums for the search of truth."). To this end, section 90.402, Florida Statutes (1997), provides that "all relevant evidence is admissible, except as provided by law." It seems clear that the goal of this search for truth is to bring before the fact-finder as much relevant evidence as possible to assist in the deliberative process. As presently written, the rule discourages criminal defendants from presenting potentially beneficial evidence by exacting a price for that presentation. Although a criminal defense attorney may not fail to introduce evidence which directly exculpates his client of the crime charged for the sake of preserving the right to address the jury last in closing argument, the same cannot be said of other types of important evidence which may not be per se exculpatory but are significant to a secondary, but nevertheless important issue. Before introducing such evidence counsel is forced to weigh what is to be gained by the introduction of that evidence against the loss of the final argument. All too often, defense attorneys believe that their oratorical persuasive abilities in final argument can better serve their clients and the balance is erroneously stricken in favor of closing argument. If the defendant is convicted, this decision inevitably creates an issue concerning whether the defendant received the effective assistance of counsel. See Van Poyck v. State, 694 So.2d 686, 697 (Fla.), cert. denied, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); Cole v. State, 700 So.2d 33, 36 (Fla. 5th DCA 1997), review denied, 705 So.2d 569 (Fla.1998).
Finally, the rule sometimes leads to less than ethical behavior in the courtroom. Having evidence which would be useful, but unwilling to surrender final argument, defense counsel will have exhibits they have no intention of introducing marked for identification. They will then question a witness(es) about the exhibit, parade the exhibit in front of the jury and ultimately refuse to offer it into evidence.
The problems discussed above can be easily avoided by changing Rule 3.250 to allow the state to have opening and closing arguments during summation in all criminal cases. Such a change in the rule would encourage the presentation of relevant evidence, enhance the search for truth and eliminate the misguided notion that having the final argument in summation is more important than the introduction of potentially important evidence.
Affirmed.
NOTES
[1] The United States Supreme Court has similarly held that "trial judges retain wide latitude... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
[2] The rule reads as follows:

In all criminal prosecutions the accused may choose to be sworn as a witness in the accused's own behalf and shall in that case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony against himself or herself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his or her own behalf, and a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury.
(Emphasis added).
[3] It should be noted that if we had found that the state had opened the door to the introduction of the toxicological results by Dr. Bell's inadvertent mention of the testing, we would have been compelled to remand for a new trial. Presuming that the state learns from its mistakes, there would be no inadvertent mention of the toxicology testing in the re-trial and the defendant would receive the identical trial he received in the first instance.
[4] This case presents a thorough history of the rule and its predecessor statutes dating back to 1853.
[5] In forty of those states, the District of Columbia and all U.S. District Courts the order of final argument is prosecution, defense, prosecution. In six states, the order is defense, prosecution.