820 So.2d 891 (2002)
THE FLORIDA BAR, Complainant,
v.
John T. CARLON, Jr., Respondent.
Nos. SC95539, SC00-1344.
Supreme Court of Florida.
April 25, 2002.
Rehearing Denied June 24, 2002.
*892 John F. Harkness, Jr., Executive Director, and John A. Boggs, Staff Counsel, Tallahassee, FL; and David M. Barnovitz, Bar Counsel, and Ronna Friedman Young, *893 Co-Bar Counsel, Fort Lauderdale, FL, for Complainant.
John T. Carlon, Jr., pro se, Fort Lauderdale, FL, for Respondent.
PER CURIAM.
Upon consideration of the motion for rehearing, we withdraw our previous opinion and issue the following opinion.[1]
We have for review a referee's report regarding an alleged ethical breach by respondent John T. Carlon, Jr., during his representation of Darlene Woodburn (Woodburn matter). We have jurisdiction. See art. V, § 15, Fla. Const. During the pendency of that review, Carlon requested review of a separate referee's report regarding another alleged ethical beach by Carlon committed during his representation of Bruce and Richard Whalley (Whalley matter). We have jurisdiction over that review pursuant to the same constitutional provision. We have consolidated our review of these cases.

WOODBURN MATTER
The Florida Bar filed a complaint against respondent John T. Carlon, Jr., alleging that Carlon charged a clearly excessive fee in connection with his representation of Darlene Woodburn. See R. Regulating Fla. Bar 4-1.5(a). The appointed referee[2] found Carlon guilty of violating rule 4-1.5(a) and recommended that Carlon be: (1) suspended for ninety-one days; (2) ordered to pay restitution to Woodburn, within thirty days of the date of this Court's order, in the amount of $3,340.10 plus interest from December 18, 1997; and (3) ordered to pay the Bar's costs in the amount of $1,160.20.[3]
The record indicates that Woodburn telephoned Carlon in December 1997 seeking assistance in securing an asset in Arizona improperly allocated to her ex-husband under an Arizona divorce decree. There was no prior attorney-client relationship. Carlon advised Woodburn that she would have to conform to both Florida and Arizona laws. On December 18, 1997, Woodburn and Carlon entered into a written retainer agreement. This agreement set forth Carlon's fee schedule and stated that Carlon's hourly rate was $250, that he required a $4000 retainer, and that he would charge a $500 administrative fee for opening the file. Woodburn paid Carlon the $4000 retainer.
Between December 18, 1997, and March 27, 1998, Carlon sent identical letters to twelve separate Arizona attorneys soliciting their interest in securing the asset. Carlon also sent identical letters to two separate Arizona attorneys soliciting their interest in a possible legal malpractice action against Woodburn's former attorney. The names of the Arizona attorneys were *894 extracted by Carlon from a Martindale-Hubbell directory. After not hearing from Carlon, Woodburn independently hired an Arizona attorney on April 1, 1998. That attorney successfully obtained an amended Arizona divorce decree and consequently secured the asset for Woodburn. The Arizona attorney charged Woodburn $404. For his services Carlon charged Woodburn a total of $3,340.10 and refunded her $659.90 from the $4000 retainer. Carlon's total charge was the sum of $2825 in services, $15.10 in actual costs, and a $500 administrative fee for opening the file.
In her findings of fact, the referee found in pertinent part:
H. As evidenced by the two (2) bills rendered by respondent to Woodburn, the only services claimed to have been rendered by respondent to Woodburn consisted of an initial consultation, securing names from Martindale-Hubbell, drafting and mailing the two (2) above referenced form letters, and receiving and responding to his client's two correspondences regarding respondent's fees.
I. Respondent's task in securing names from Martindale-Hubbell for purposes of obtaining Arizona counsel for Woodburn did not present respondent with a novel, complex or difficult question requiring any skill other than the ability to extract names from a directory.
J. In undertaking representation of Woodburn there was no likelihood that the acceptance of such employment would preclude other client employment of respondent.
K. The significance of, amount and responsibility involved in the subject matter of Woodburn's representation was minimal.
L. Respondent obtained no results for Woodburn.
M. Woodburn imposed no time limitations upon respondent nor did any circumstances arise during the course of his representation of Woodburn which imposed any such time limitations.
N. Woodburn made no special time demands or requests of the respondent.
O. There was no prior attorney/client relationship between the respondent and Woodburn nor any unusual nature or length of the professional relationship.
P. Respondent's representation of Woodburn demonstrated no skill, expertise or efficiency of effort.
Q. Upon a review of the facts surrounding respondent's representation of Woodburn, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee (including a $500.00 administrative fee for opening Woodburn's file) exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching and/or an unconscionable demand by respondent.
R. Except for the $659.90 refund ... respondent has made no further refunds to Ms. Woodburn.
Florida Bar v. Carlon, No. SC95539, report of referee at 3-5 (report filed Mar. 13, 2000) (Woodburn Report).
Following these findings, the referee determined that respondent violated rule 4-1.5(a). In considering her recommended sanctions, the referee found that Carlon had a dishonest motive and failed to acknowledge the wrongful nature of his conduct, and that Woodburn suffered actual and substantial harm as a result of respondent's misconduct. The referee also considered Carlon's previous disciplinary history:
In Florida Bar v. Carlon, 505 So.2d 1325 (Fla.1987), Carlon received a public reprimand for billing and suing a homeowner's *895 association, securing a default judgment and garnishing the association's bank account, all in violation of a fee agreement.
In Florida Bar v. Carlon, October 15, 1996, Florida Bar File No. 95-51,391(17H), respondent received an admonishment for minor misconduct for running an advertisement considered to be misleading.
In Florida Bar v. Carlon, 727 So.2d 912 (Fla.1/28/99) respondent was placed on indefinite probation with conditions for failing to make restitution directed in connection with the admonishment he received in Florida Bar File No. 95-51,391(17H).
Woodburn Report at 9.

WHALLEY MATTER
The Florida Bar alleged that Carlon violated rule 4-1.5(a) by charging a clearly excessive fee in his representation of Bruce Whalley and Richard Whalley (the Whalleys) in connection with the administration of the estate of their mother, Stella A. Whalley, who died intestate on May 9, 1998. The appointed referee[4] found Carlon guilty of violating rule 4-1.5(a) and recommended that Carlon be: (1) suspended for ninety-one days; (2) ordered to pay restitution to the Whalleys within thirty days of the date of this Court's order in the amount of $6580 plus interest from November 30, 1998 (the date of Carlon's final invoice); and (3) ordered to pay the Bar's costs in the amount of $1,155.25.
The record indicates that the Whalleys were referred to Carlon by a mutual friend of Carlon and the Whalleys. There was no previous relationship between Carlon and Bruce, Richard, or Stella Whalley. The estate consisted of a residence valued at $106,000, two bank accounts valued at approximately $8000, and miscellaneous personal property valued at $500. The estate had no creditors, and no claims were filed against the estate. The Whalleys were the sole beneficiaries and distributees of the estate.
The Whalleys agreed that Bruce would petition to be appointed personal representative. Carlon advised that there were two ways he could charge: either hourly or by a flat fee. The Whalleys requested that Carlon charge whichever way would be least expensive. The Whalleys and Carlon signed a written fee agreement on May 16, 1998, in which the Whalleys agreed to pay Carlon $200 per hour. Carlon charged and received $11,080 in fees for his representation of Bruce Whalley as personal representative. The amount included $120 which Carlon agrees was an overcharge due to a mathematical error on Carlon's part. Carlon was entitled to an approximate fee of $3435 under section 733.6171, Florida Statutes (2000).
The referee found that the administration of this estate was simple and presented no novel, complex, or difficult questions. The only unusual issue presented was a "wild mortgage" on the real property, which the purchaser's attorney resolved. The referee further found that there was no likelihood that Carlon's representation of the Whalleys would preclude other representation. The Whalleys made no special time demand. The estate was closed in ordinary fashion on waivers, without an accounting.
The referee found, consistent with the testimony of the Bar's expert, a board-certified wills, trusts, and estates attorney, that $3500 would have been a reasonable *896 fee in this case, that $4500 would be excessive, and that any fee in excess of $6000 would be clearly excessive. The referee also found that Carlon charged for unnecessary research, unnecessary travel, secretarial functions, and other inappropriate activities, all at the $200 contract rate.
Based upon these findings, the referee found that Carlon violated rule 4-1.5(a). In developing her recommended sanctions, the referee found no mitigating factors. In aggravation, the referee found that Carlon had a selfish motive in charging a clearly excessive fee, that his client suffered actual harm, and that Carlon refused to acknowledge the wrongful nature of his conduct. The referee considered Carlon's prior disciplinary history, which was identical to that considered by the referee in the Woodburn matter.
Carlon raises four issues for our consideration in the Woodburn matter.[5] He likewise raises four issues in the Whalley matter.[6]

GUILT PHASE
In the Woodburn matter, Carlon initially argues that the referee erred in denying Carlon's motion to disqualify her. Carlon alleged that the referee and Bar counsel engaged in a prohibited ex parte communication. Rule Regulating the Florida Bar 3-7.6(g)(8) provides that the disqualification of a referee shall be made in the same manner as disqualification of a trial judge.
"A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing." See Arbelaez v. State, 775 So.2d 909, 916 (Fla.2000) (citing Correll v. State, 698 So.2d 522, 524 (Fla.1997)). In determining whether such a motion is legally sufficient, "this Court looks to see whether the facts alleged would place a reasonably prudent person in the fear of not receiving a fair and impartial trial." Id.
In Rose v. State, 601 So.2d 1181, 1183 (Fla.1992), we said that "a judge should not engage in any conversation about a pending case with only one of the parties participating in that conversation. Obviously, we understand that this would not include strictly administrative matters not dealing in any way with the merits of the case." The ex parte communication in the instant case involved the referee's request that Bar counsel seek an extension of time from this Court for the referee to file her written report. This communication was not prohibited because it concerned a strictly administrative matter. See Arbelaez, 775 So.2d at 916 (ex parte communication between trial judge and State over setting date for State to file response to 3.850 motion is administrative matter). Thus, Carlon's motion to disqualify the referee was not legally sufficient.
Carlon next argues in the Woodburn matter that the referee erred in denying *897 his motion for a pretrial conference. Rule Regulating the Florida Bar 3-7.6(e)(1) provides that the Florida Rules of Civil Procedure apply except as otherwise provided in rule 3-7.6. As that rule is silent regarding pretrial conference, Rule of Civil Procedure 1.200 applies. Rule 1.200(b) provides in part: "After the action is at issue the court itself may or shall on the timely motion of any party require the parties to appear for a conference...." (Emphasis added.) We agree that Carlon's motion should have been granted. However, Carlon has not shown any resulting prejudice from the denial of this motion. Cf. In re Graziano, 696 So.2d 744, 752 (Fla.1997) (respondent judge in Judicial Qualifications Commission (JQC) proceeding required to show prejudice resulting from JQC's failure to give complete notice required by rule 1.200(c)). Thus, we do not disturb the referee's report in the Woodburn matter on this basis.
Similarly, Carlon argues in the Whalley matter that the referee ignored his request for a pretrial conference. However, Carlon has not demonstrated any resulting prejudice from the denial of that motion. See id. For the same reasons, we do not disturb the referee's report in the Whalley matter on this basis.
Carlon next argues in the Woodburn matter that the referee impermissibly restricted his cross-examination of Woodburn. The referee sustained the Bar's objections on relevancy grounds when Carlon attempted to ask Woodburn about her employment history with the Internal Revenue Service (IRS) and her marital history. Carlon argues that Woodburn's over twenty years at the IRS and extensive marital history were proper areas to cover on cross-examination because these issues were relevant to demonstrate that Woodburn was not deceived by Carlon.
A party is permitted wide latitude in cross-examination. See Diaz v. State, 747 So.2d 1021 (Fla. 3d DCA 1999). While a trial court may place reasonable limits on cross examination, those limits are reviewed by an appellate court for an abuse of discretion. See Moore v. State, 701 So.2d 545, 549 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998); Music v. Hebb, 744 So.2d 1169, 1171 (Fla. 2d DCA 1999). Here, Carlon's questions were relevant to Woodburn's sophistication in business affairs when entering into the retainer agreement and should have been allowed. However, under the facts of this case, we find the referee's error in limiting Carlon's cross-examination of Woodburn to be harmless.
Carlon next challenges the sufficiency of the evidence supporting the referee's finding of guilt in the Woodburn matter. An expert for the Bar opined that extracting names from Martindale-Hubbell neither presented a novel, complex, or difficult task, nor precluded representation of other clients. Based on these conclusions, the expert testified that charging $3,340.10 was so clearly excessive for the limited service provided that it constituted sheer overreaching. The referee found:
Upon a review of the facts surrounding respondent's representation of Woodburn, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee (including a $500.00 administrative fee for opening Woodburn's file) exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching and/or an unconscionable demand by respondent.
Woodburn Report at 4-5.
Regarding our standard of review, we have said:

*898 A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. If the referee's findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Florida Bar v. Vining, 761 So.2d 1044, 1047 (Fla.2000) (citations omitted).
Based on this record, we agree with the referee's finding that Carlon charged a clearly excessive fee. The expert's uncontroverted testimony that the total amount charged by Carlon was clearly excessive constitutes competent, substantial evidence. We are convinced that what Carlon testified he did in rendering services to Woodburn and what was on his itemized statement for services are at such a substantial variance from what a lawyer of ordinary prudence would charge in this situation that we conclude these statements for services were intentional misrepresentations of the time expended for services rendered. Accordingly, we do not disturb the referee's finding in the Woodburn matter that Carlon violated rule 4-1.5(a).
Likewise, in the Whalley matter, Carlon argues that there is no record evidence indicating that $200 is a clearly excessive hourly fee. Further, Carlon argues that the Bar's expert, a probate lawyer, did not criticize Carlon's handling of the real estate issue; thus, there was no basis for the expert's opinion regarding the fee charged. Carlon asserts that he performed all duties contemplated by the written agreement and that the referee must refute all reasonable hypotheses before finding a rules violation.
We reject Carlon's arguments and find that there is competent, substantial evidence contained in the record supporting the referee's guilt finding. For instance, section 733.6171 sets forth a statutorily presumed reasonable fee for the personal representative's attorney. Under the statutory compensation schedule, Carlon would have received $3435. Cf. Florida Bar v. Garland, 651 So.2d 1182, 1184 (Fla. 1995) (finding no rule 4-1.5(a) violation where amount charged in probate matter was consistent with amount section 733.6171 would have allowed). Further, the Bar's expert testified that $3500 was reasonable. The expert noted that while Carlon was tangentially involved with the "wild mortgage" issue, any fee over $4500 would be excessive and any fee over $6000 would be clearly excessive. The expert also testified as to specific instances of overcharges.
The referee found that Carlon charged a $200 hourly rate for unnecessary research, travel, secretarial services, and other inappropriate activities as well as finding that any fee over $4500 would be excessive and any fee over $6000 would be clearly excessive. These findings have evidentiary support in the record. Further, Carlon points to no case law for his proposition that all reasonable explanations must be refuted before the clear and convincing standard is met. As there is competent, substantial evidence in this record, we uphold the referee's finding in the Whalley matter that Carlon violated rule 4-1.5(a). See Vining, 761 So.2d at 1047.
We also reject Carlon's other guilt phase issue in the Whalley matter. Carlon argues that he was entitled to a sanctions award under Florida Rule of Civil Procedure *899 1.380(a)(4) for his reasonable expenses in obtaining an order compelling discovery. Carlon moved the referee for an order compelling discovery. That motion was denied by the original referee, but the order was later vacated and Carlon's motion was granted by the successor referee. Likewise, the Bar's motion to compel was also granted. The Bar's order compelling discovery was never vacated by the successor referee. The record reflects no further action in respect to these motions that was sought from the referee. Thus, we find no basis for any relief by this Court in respect to these discovery orders.

DISCIPLINE
This Court's review of a referee's recommended discipline is broader than the review afforded to a referee's factual findings because we have the ultimate responsibility and authority to determine appropriate sanctions. See Vining, 761 So.2d at 1048. Further, this Court views cumulative misconduct more seriously than an isolated instance of misconduct. See id. In respect to discipline, the Bar argues in both cases that Florida Bar v. Richardson, 574 So.2d 60 (Fla.1990), supports the imposition of a ninety-one-day suspension. In view of the same conduct being found in both of Carlon's cases when considered in light of Carlon's disciplinary history, we conclude that our decision in Richardson supports a ninety-one-day suspension.[7]
In Richardson there were several instances of excessive fees being charged to clients. See Richardson, 574 So.2d at 60. One instance in Richardson was a probate matter in which the disciplined lawyer charged nearly $11,000 in fees where the non-complex probate estate was valued at approximately $22,000. See id. There, the attorney charged his client a minimum of twenty minutes per phone call even if the recipient of the call did not answer, charged a minimum of forty-five dollars per page for document preparation, and charged a monthly cover charge. See id. This is similar to Carlon's conduct in inflating his statement for services rendered in both matters. Thus, a ninety-one-day suspension is appropriate.
We now turn to the referees' other proposed sanctions. We accept the referees' findings that the Bar's costs are to be taxed against Carlon in both the Woodburn ($1,160.20) and Whalley ($1,155.25) matters. We also accept the proposed sanctions that Carlon must pay restitution to Woodburn with interest from December 18, 1997, and that Carlon must pay restitution to the Whalleys with interest from November 30, 1998. See R. Regulating Fla. Bar 3-5.1(i).[8] We impose as an additional requirement that Carlon must make the restitution payments to Woodburn and the Whalleys prior to his reinstatement to *900 the practice of law. We disagree with the referee, however, with the amount of restitution found by the referees in both cases.
In the Woodburn matter, the referee recommended restitution in the amount of $3,340.10 plus interest from December 18, 1997, which is the entire amount charged by Carlon after the refund. In our original opinion, we did not agree that Carlon performed no services in researching Martindale-Hubbell and writing the letters; thus, we remanded the issue to the referee for a determination as to an amount considered clearly excessive given the services Carlon did perform. While the motion for rehearing was pending before this Court, the referee conducted further proceedings and determined $2,936.10 to be clearly excessive. See Florida Bar v. Carlon, No. SC95539, report of referee on remand at 5, (report filed Dec. 5, 2001). Neither Carlon nor The Florida Bar contest the referee's determination. Accordingly, we approve the referee's determination on remand. Carlon must pay to Woodburn $2,936.10 plus interest from December 18, 1997. Additionally, Carlon must pay Woodburn this amount before Carlon may be reinstated to the practice of law.
In the Whalley matter, we disagree with the amount due the Whalleys is $6580 plus interest from November 30, 1998. We agree with the Bar's argument before the referee that rule 4 1.5 proscribes only charging a clearly excessive fee. See R. Regulating Fla. Bar 3-5.1(i) ("[T]he amount of restitution ... shall not exceed the amount by which a fee is clearly excessive...."). Only restitution of the amount considered clearly excessive may be imposed as a condition for readmission or reinstatement. As the referee made separate determinations as to what was considered an excessive fee and what was considered a clearly excessive fee, the referee should have based her determination of the amount due the Whalleys on the clearly excessive figure. Thus, Carlon must pay the Whalleys $5080 plus interest from November 30, 1998.[9] Carlon's failure to pay this restitution will bar any application by him for reinstatement to the practice of law.
In our original opinion, we imposed a ninety-one day suspension in each case with the suspensions to run concurrently. While the rehearing motion was pending, Carlon advised this Court that he began his suspension on November 3, 2001. Accordingly, we suspend John T. Carlon, Jr., from the practice of law for ninety-one days as discipline in each case with the suspensions to run concurrently, effective, nunc pro tune, to November 3, 2001. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from John T. Carlon, Jr., in the amount of $2,315.45, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] In consideration of the substituted opinion, we grant the motion for rehearing.
[2] Circuit Judge Virginia Gay Broome served as the referee.
[3] Rule 4-1.5(a) provides:

(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
[4] Judge Broome initially served as the referee. After she recused herself, Circuit Judge Elizabeth T. Maass was appointed referee.
[5] The issues Carlon raised relating to the Woodburn matter are: (1) whether the referee and Bar counsel engaged in improper ex parte communication; (2) whether the referee erred in denying Carlon's request for a pretrial conference; (3) whether the referee erred in restricting Carlon's cross-examination of the Bar's complaining witness; and (4) whether there is competent, substantial evidence to sustain the referee's findings and recommendations.
[6] The issues raised by Carlon relating to the Whalley matter are: (1) whether the referee erred in denying Carlon's request for a pretrial conference; (2) whether competent, substantial evidence exists to find that Carlon charged a clearly excessive fee; (3) whether the referee erred in denying Carlon's motion for sanctions; and (4) whether the referee's recommended sanctions are appropriate.
[7] In aggravation, both referees identically considered Carlon's previous disciplinary action consisting of: (1) a public reprimand in 1987, Florida Bar v. Carlon, 505 So.2d 1325 (Fla.1987); (2) an admonishment for minor misconduct in 1996, Florida Bar v. Carlon, October 15, 1996, Florida Bar Rule No. 95-51,391(17H); and (3) indefinite probation relating to the admonishment case due to Carlon's failure to pay restitution, Florida Bar v. Carlon, 727 So.2d 912 (Fla.1999).
[8] Rule Regulating the Florida Bar 3-5.1(i) provides:

In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not exceed the amount of such fee, or in the case of conversion shall not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
[9] The $5080 in restitution due in the Whalley matter is the difference between $6000, the maximum amount respondent could have charged without being clearly excessive, and $11,080, the amount respondent actually charged.