# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-667


**FREDY RIVERA-SANTOS**

**VERSUS**

**ADA ELBA MELENDEZ RIVERA-SANTOS**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT,
PARISH OF VERNON, NO. 53,122
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JIMMIE C. PETERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED AS AMENDED.**



**Tony C. Tillman**
**Post Office Drawer 648**
**Leesville, LA 71446**
**(318) 239-7983**
**Counsel for Plaintiff/Appellant:**
    **Fredy Rivera-Santos**

**Scott Westerchil**
**101 South First Street**
**Leesville, LA 71446**
**(337) 239-9076**
**Counsel for Defendant/Appellee:**
    **Ada Elba Melendez Rivera-Santos**

PETERS, J.

The issue before us concerns the determination of a divorced wife's interest in her former husband's retirement benefits, insofar as they are attributable to his employment during the existence of the community. The former husband, Fredy Rivera-Santos, appeals the trial court's determination that the benefits should be partitioned according to the formula set forth in *Sims v. Sims*, 358 So.2d 919 (La.1978). For the following reasons, we affirm the trial court's judgment awarding Ms. Rivera-Santos a portion of Mr. Rivera-Santos' retirement benefits, but amend the judgment to partition the said benefits according to the supreme court's instructions found in *Hare v. Hodgins*, 586 So.2d 118 (La.1991).

## DISCUSSION OF THE RECORD

Fredy Rivera-Santos and Ada Elba Rivera-Santos were married on June 3, 1981. Mr. Rivera-Santos began serving in the United States Army on June 28, 1981, and, with the exception of the period of time between July 27, 1987, and January 28, 1988, he remained on active duty through August 16, 2002, the date of trial on the issues now before this court. On March 24, 1993, Mr. Rivera-Santos filed a petition for divorce, and the parties were divorced by judicial decree on July 27, 1993. Thus, he acquired military retirement benefits during the existence of the community of acquets and gains, as well as after the community dissolved.

On March 17, 2001, Ms. Rivera-Santos filed a rule to show cause, seeking recognition of her interest in her former husband's military retirement benefits. In response, Mr. Rivera-Santos filed a rule to show cause, requesting that the trial court limit his former wife's interest in the retirement benefits based on his rank at the time of the divorce as opposed to his rank when he ultimately retires. By a judgment rendered August 16, 2002, and signed February 14, 2003, the trial court granted

judgment in favor of Ms. Rivera-Santos. The February 14, 2003 judgment reads in pertinent part as follows:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that ADA ELBA MELENDEZ RIVERA-SANTOS, NOW MELENDEZ, has an interest in the military retirement benefits accruing to FREDY RIVERA-SANTOS as a result of his service in the United States Armed Forces, when and if they vest, as her sole and separate property, equal to the following formula: One half, multiplied by a percentage in which the numerator is 140 (months of service during marriage) and the denominator is the total months of service creditable for retirement at the time of retirement, multiplied by the military retired pay payable to a member retiring at the rank of W-2 who would have retired with twenty years service in June 2001, together with all increases that did or would have occurred, other than increases attributable to elevation in rank or services rendered after said date, plus a like percentage of all cost of living adjustment increases that accrue to said military retirement benefits hereafter. For the purpose of interpreting this Court's intention in making the division set forth in this Order, "military retirement" means disposable retired pay as defined in 10 U.S.C. § 1408. All sums payable to ADA ELBA MELENDEZ RIVERA-SANTOS, NOW MELENDEZ as a portion of military retirement shall be payable from FREDY RIVERA-SANTOS' disposable retired or retainer pay to the extent that it is so restricted by law.

In his sole assignment of error, Mr. Rivera-Santos contends that the trial court erred in its calculation of the amount of his retirement benefits due his former wife.

**OPINION**

The trial court applied the formula enunciated by the supreme court in *Sims v. Sims*, 358 So.2d 919 (La.1978), to reach its decision concerning the division of the retirement benefits. In *Sims*, the supreme court established the division formula for pension or retirement benefits as follows:

| Portion of pension attributable to service during marriage | | | | |
|---|---|---|---|---|
| ————————————— | x | ½ | x | lump sum or annuity |
| Portion of pension attributable to total service | | | | |

Generally, the result of this mathematical calculation represents the amount due

2

the former spouse. However, in *Hare v. Hodgins*, 586 So.2d 118, 123 (La.1991), the supreme court recognized that the *Sims* formula is not applicable to all pension or retirement division situations. In *Hare*, the supreme court stated:

> The general rules for the partition of community property, however, do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after. In such cases, the pension benefits are composed of the separate property interest of the employee spouse in addition to the community interest. Furthermore, there is no custom from which rules can be derived for each particular situation. Accordingly, in the present case and others a court is bound to proceed and decide equitably to some extent, making resort to justice, reason and prevailing usages.
>
> . . . .
>
> [T]here will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings. *Fondi v. Fondi*, supra; *Gemma v. Gemma*, supra. In such cases, the partitioning court should select a more equitable method or modify the community or marital fraction rule to attribute that part of the post-divorce increase to the employee spouse separately. Although the emerging jurisprudential precepts are not yet well defined, some factors may be identified as helpful guidelines in determining when such a modification is required.

*Id*. at 127-128.

The supreme court in *Hare* established a three-part test for the partitioning court to apply in determining whether or not a substantial post-community increase is due purely to personal merit. "First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements." *Id.* The employee spouse has the burden of proof, and any doubt should be resolved in favor of the community. *Id.* Thus, *Hare* recognized that in the interest of equality and equity, a trial court has great discretion in dividing

3

community-owned pension benefits. "[If] the trial court agree[s] that the pension was increased due to the employee spouse's personal effort or achievement, benefits may then be reallocated using the highest income the employee spouse would have received under the normal course of events, including ordinary promotions and cost increases and gains due to non-personal factors." *Id.* at 128.

In its oral reasons for judgment rendered at the conclusion of the evidence presentation, the trial court recognized the *Hare* exception and opined that "[the plaintiff] proved he had some substantial increases in salary post community." The trial court also stated that with regard to the second requirement set forth in *Hare,* Mr. Rivera-Santos had met that burden as well. Concerning the third requirement, the trial court concluded that "the increment must be attributable to the employee/spouse's meritorious individual efforts or achievement . . . [and in this case] that's in part what happened." In summary, the trial court stated that "you could argue that the move from NCO to Warrant Officer is not a normal progression of benefits or promotions, and I would acknowledge that it is not, [and] that it would probably qualify if you take all of the NCO's in the Army and look at the percentage that moved from NCO to Warrant Officer you would have to classify that as an *extraordinary* move." (Emphasis added.)

Despite its conclusion that Mr. Rivera-Santos satisfied all three elements required in an analysis under *Hare*, the trial court then concluded that it was "not convinced that [the *Hare* exception] applies to the case of military benefits." In written reasons for judgment executed on December 6, 2002, the trial court concluded that "Sims [was] the controlling law in Louisiana [with] respect to the entitlement to a percentage of the spouse's retirement" and "[t]hat formula is the number of years of military service during the marriage divided by the total number of years of military

service, divided by two." Mr. Rivera-Santos asserts on appeal that the trial court erred in this conclusion. We agree.

We find that the trial court erred as a matter of law when it found that the *Hare* exception did not apply in the case of military benefits. After reviewing the law and jurisprudence dealing with community-owned retirement benefits, we find nothing to suggest that the *Hare* exception would not be applicable in a case involving military benefits. "Where one or more trial court legal errors interdict the fact finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record." *Campo v. Correa,* 01-2707, p. 10 (La. 2002), 828 So.2d 502, 510 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 746-47).

In this case, the evidence presented at trial established that in 1993, Mr. Rivera-Santos held the rank of Staff Sergeant, E-6, and had an annual income of $19,587.60. In August of 1993, the month after his divorce, he received a base pay of $1,623.00 for that month. By 2001, he held the rank of Warrant Officer, W-2, and had an annual income of $39,637.40. By June of 2002, two months before the trial on the rules, his monthly base pay was $3,559.80. Thus, from the time of his divorce until the time of trial, Mr. Rivera-Santos had received a 119% increase in base pay. Mr. Rivera-Santos clearly established the first prong of the three-part test of *Hare, i.e.,* that he had a "fairly substantial increase" in his post-community earnings.

Concerning the second and third prongs of the three-part test, that this substantial increase was due to something else, *i.e.,* "a non-personal factor, not cost-of-living raises, etc.," Mr. Rivera-Santos introduced evidence that he was not qualified to become a Warrant Officer prior to his divorce. Additionally, Mr. Rivera-Santos

5

introduced copies of the following documents in an effort to meet his burden of proving that numerous personal steps and significant additional responsibilities advanced his career subsequent to the dissolution of the marriage: paperwork requesting a waiver and consideration to become a Warrant Officer, Army discharge papers, Warrant Officer commission, Warrant Officer orders, Warrant Officer School diploma, Airborne and other specialized training certificates, evaluation reports, letters of recommendation from officers, and numerous awards and commendations for performance and meritorious service. These documents, together with his testimony, established that Mr. Rivera-Santos actively sought out the opportunity to become a Warrant Officer and had to obtain a waiver because initially he did not have the requirements necessary to apply. After becoming a candidate for Warrant Officer, he attended special training schools with the full understanding that his "failure to comply with active duty orders [or pass the school] would result in cancellation of his appointment." He earned his Warrant Officer promotion and underwent additional training not otherwise required. Because of his efforts, he earned awards for his personal performance and received evaluations which requested that the military "promote [him] ahead of contemporaries." More importantly, he earned, and continues to earn, a significantly higher-paying position, while remaining within the coverage of the military benefits.

Chief Warrant Officer Earnest Lee Wilson, an active duty soldier stationed at Fort Polk, Louisiana, testified for Mr. Rivera-Santos to explain the difference between a Warrant Officer and a non-commissioned officer. Chief Warrant Officer Wilson is a twenty-nine-year military veteran who had advanced in his military career through the enlisted and non-commissioned officer ranks and, at the time of trial, had attained the rank of Warrant Officer, W-4. The trial court recognized him as an expert "in the

area of property accounting technicians and the general process in which Warrant Officers may seek to be promoted and the general duties that Warrant Officers are called on to perform within their speciality."

Chief Warrant Officer Wilson testified that Warrant Officers seeking promotion to the next level are required to submit themselves to a review board comprised of senior Warrant Officers who review the applicant's record and make a professional assessment of his ability to perform at the next level. According to Chief Warrant Officer Wilson, as an individual progresses through the promotion system, there exist fewer slots to be filled and the process becomes increasingly more competitive. In his opinion, personal performance and individual effort and achievement are more important in the process than is longevity. As such, this testimony corroborated with other evidence showed that Mr. Rivera-Santos successfully proved the third prong of the *Hare* test, that the "increment [was] attributable to the employee spouse's meritorious individual efforts or achievements."

Ms. Rivera-Santos asserts in her brief that the trial court erred in allowing Chief Warrant Officer Wilson to testify as an expert. She asserts that Chief Warrant Officer Wilson did not provide the trial court with his educational background; that he never sat on a promotion board and, as such, never was involved in the decision-making process; and that he never had been recognized as an expert in the past.

Louisiana Code of Evidence Article 702 provides in part that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This court in *Abshire v. Wilkerson*, 01-0075, p.4 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158, 1162, recognized the discretion afforded the trial court in cases involving expert witnesses as follows:

"A trial judge has wide discretion in determining whether to allow a

7

witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous." *Mistich v. Volkswagen of Germany, Inc.*, 95-0939, p.8 (La.1/29/96); 666 So.2d 1073, 1079. This includes the determination of "how much and what kind of education and/or training adequately qualify an individual as an expert." *Darbonne v. Wal-Mart Stores, Inc.*, 00-551, p.7 (La.App. 3 Cir. 11/2/00); 747 So.2d 1022, 1027.

Ms. Rivera-Santos presents us with no legal authority to suggest that the trial court abused its discretion in recognizing Chief Warrant Officer Wilson as an expert "in the area of property accounting technicians and the general duties the Warrant Officers are called on to perform within their specialty." The law is clear that "[a] combination of specialized training, work experience, and practical application of an expert's knowledge can combine to demonstrate that person is an expert; a person may qualify as an expert based upon experience alone." *State v. Berry*, 95-1610, p. 20 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 456, *writ denied*, 97-0278 (La. 10/10/97), 703 So.2d 603. Thus, after reviewing the record, we cannot say that the trial court erred in allowing the Chief Warrant Officer to testify as an expert.

Ms. Rivera-Santos also argues on appeal that the trial court erred in allowing her former husband to introduce copies of documents representing milestones in his military career. Her objections are two-fold. First, she asserts that Mr. Rivera-Santos offered copies without producing the originals. Second, she asserts that the documents were hearsay.

Louisiana Code of Evidence Article 1003 provides that a duplicate is admissible to the same extent as an original unless:

> (1) A genuine question is raised as the authenticity of the original;
> (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
> (3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.

"A duplicate copy . . . is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." *State v. Carter*, 97-2902, p. 30 (La.App. 4 Cir. 5/10/00), 762 So.2d 662, 681, *writ denied*, 00-1598 (La. 6/15/01), 793 So.2d 1233. We first note that Mr. Rivera-Santos testified he had the originals in his possession and available for inspection and was offering the copies in lieu of the originals. Absent a further showing by Ms. Rivera-Santos that Mr. Rivera-Santos was in bad faith, this assignment of error is without merit. With regard to most of the copies offered, Ms. Rivera-Santos did not request to see the originals and did not object to the introduction of the copies. She cannot now complain of Mr. Rivera-Santos' failure to produce the originals.

Concerning her second assertion that certain documents were hearsay, the record reflects that she did timely object to their introduction. In response to the objection, counsel for Mr. Rivera-Santos asserted that the documents were not being offered for the truth of the content, but rather to show the nature of the promotion process he was required to go through after his divorce. The trial court did not err in admitting the documents for that purpose. La.Code Evid. arts. 801 through 803.

We recognize that the fifth circuit, in *Wirstrom v. Wirstrom*, 608 So.2d 216 (La.App. 5 Cir. 1992), upheld the trial court's decision to use the *Sims* formula to partition the husband's Air Force pension, despite his contention that his post-community efforts accounted for an increase in the pension. However, that case is distinguishable from the matter now before us in that the former husband in *Wirstrom* merely presented his own self-serving testimony that his personal and post-community efforts were responsible for his substantial pay increase. He offered no evidence of his prior or current pay, what raises he received, or his anticipated pay at retirement. Simply stated, the husband in *Wirstrom* failed to meet his burden of proof under *Hare,*

and nothing in that case indicates that the *Hare* exception is not intended to apply to cases involving military retirement benefits.

This court in *McCown v. McCown*, 93-899, p. 6 (La.App. 3 Cir. 03/02/94), 634.So.2d 1249, 1252 (citing *Hare*, 586 So.2d 128), addressed the issue of whether or not personal achievements warrant the deviation from the *Sims* formulas as follows:

> "[If an] employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a *post-community degree*, or *transfer within the company to an unrelated area of service . . . Such increases are not 'acquired during the existence of the legal regime through the effort, skill, or industry of either spouse' are not fairly ascribable to the community and should not be considered community property*."

(Emphasis added.)

Just as the trial court did, we conclude that Mr. Rivera-Santos' post-community increases in compensation have been substantial and that they were not due to a non-personal factor, but attributable purely to his personal effort and skill. We find that the trial court erred as a matter of law in concluding that the *Hare* exception would not apply in this case involving military retirement benefits. We recognize that few courts have addressed the *Hare* exception to *Sims*. However, in the matter before us, Mr. Rivera-Santos had established all of the elements necessary to claim his right to the exception, and it would be an injustice to him to do otherwise. Therefore, we amend the trial court's judgment to conform with the evidence presented.

## DISPOSITION

For the following reasons, we affirm the trial court's recognition of Ada Elbe Melendez Rivera-Santos' interest in the retirement benefits of her former husband, Fredy Rivera-Santos. However, we amend the trial court's judgment to reflect that the base for calculating the retirement benefit is that of Staff Sergeant, E-6, and not Warrant Officer. In doing so, we amend that portion of the judgment purporting to

10

establish the formula for calculating the benefit division by deleting the reference to "the rank of W-2" and replacing it with "the rank of Staff Sergeant, E-6." We assess all costs of these proceedings to Ada Elba Melendez Rivera-Santos.

**AFFIRMED AS AMENDED.**