COPE, J.
 

 This is an appeal of a conviction of manslaughter. The question is whether the trial court erred in excluding evidence from the medical examiner that the victim had alcohol and cocaine in his blood at the time of the shooting. We remand for a new trial.
 

 I.
 

 Defendant-appellant Tulio Arias lived in an apartment complex and parked his car in the parking lot. The defendant works as a security guard and is licensed to carry a firearm. At approximately 10:00 p.m. the defendant went down to his ear with his ten-year-old disabled daughter and daughter’s friend. He planned to leave the children with a relative and then go to work.
 

 The defendant found that a car had been illegally parked behind his vehicle, so that the defendant was unable to leave. The defendant knocked on several doors in the apartment complex, trying to find out who was blocking him in. When these inquiries were unsuccessful, the defendant called a tow truck. The illegally parked car was owned by the victim, Eduardo Otero-Garriga. He was visiting in another apartment in the complex and saw the tow truck preparing to tow away his car. The victim came downstairs and talked the tow truck driver out of towing the car.
 

 When the victim determined that the defendant was the one who had called the tow truck, the victim made derogatory remarks. Further words were exchanged.
 

 The defendant testified that the victim appeared to be under the influence of alcohol and cocaine, and was acting irrationally. The defendant stated that the victim used a phrase in Spanish which meant that he (the victim) was threatening to kill the defendant.
 

 The defendant told the victim that he was armed and to stay away. The defendant drew his gun and loaded it with an ammunition clip. The defendant testified that he did this in the belief that if the victim saw the loaded firearm, the victim would back away.
 

 Instead, the victim threw his glasses down, ripped his shirt off, and started to hit his chest while telling the defendant to shoot him. The victim then ran toward the defendant and the defendant shot him seven times, killing him immediately. The defendant then called the police and fire rescue.
 

 In connection with the autopsy, the medical examiner found that the victim had a blood alcohol level of .21. He had traces of cocaine in his blood and cocaine metabolites. According to the medical examiner, this meant that the victim had likely consumed cocaine within the ten previous hours, maybe less.
 

 The State charged the defendant with first-degree murder. The defendant claimed self-defense. Prior to trial, the State filed a motion in limine seeking to exclude “[a]ny mention of the fact that the
 
 *982
 
 Deceased had alcohol or cocaine or cocaine metabolites in his body at the time of his autopsy.” The State argued that “[t]he Defendant and the Deceased were unknown to each other and the Defendant had no knowledge of the Decedent’s alcohol and drug use, and thus [the] evidence had no bearing on the Defendant’s state of mind.” The trial coui*t granted the motion.
 

 II.
 

 We first consider whether the State opened the door to the admission of toxicology evidence when it cross-examined the defendant. Having successfully excluded the toxicology evidence, the State then impeached the defendant’s testimony because he was not a toxicologist. The following transpired:
 

 Q. You testified on direct examination that you know how somebody acts when they are under the influence of cocaine, they act a certain way?
 

 A. That is correct.
 

 Q. Are you a toxicologist?
 

 A. No. I’m a security officer for 16 years.
 

 Q. Okay. You are not a toxicologist?
 

 A. No. I don’t do toxicology exams to everybody on the street.
 

 Q. Do you know what toxicologist is?
 

 A. Yes.
 

 Q. What is toxicologist?
 

 A. It’s one who studies and does testing to see if a person is intoxicated or not.
 

 Q. Okay.
 

 Had you conducted studies to see what the effects are when somebody is under the influence of cocaine?
 

 A. In a very mild way but it is something that is taught in the security training courses.
 

 Q. So in the security training mildly, they teach you if somebody does what if they’re under the influence of cocaine?
 

 A. That is correct but it’s the 16 years experience that has taught me.
 

 Q. 16 years experience of dealing with people who are under the influence of cocaine?
 

 A. Many occasions, yes.
 

 Q. And these are people that you went back and verified that they were in fact under the influence of cocaine?
 

 A. Those are people who I confirm because of the places where I work that they have been doing cocaine. I saw them. I didn’t have to go back and confirm. I saw them doing the drugs.
 

 Q. But you didn’t see Eddie doing any cocaine that night. You had never seen him?
 

 A. No.
 

 Q. Not at all?
 

 A. No. Correct.
 

 Q. When you testified to the ladies and gentlemen of the jury that he was acting crazy like on cocaine, that’s just your assumption; is that correct, Mr. Arias?
 

 A. It’s correct.
 

 After the cross-examination, the defense argued that the State had opened the door to the toxicology evidence and that the defense should be allowed to introduce that evidence. The request was denied.
 

 This court has said:
 

 The prosecutor’s use of the privilege of nondisclosure, first as a shield, then as a sword, unfairly prejudiced the defendant. While the State is free to argue to the jury any theory of a crime that is reasonably supported by evidence, it may not subvert the truth-seeking function of a trial by obtaining a
 
 *983
 
 conviction or sentence based on the obfuscation of relevant facts.
 

 Gonzalez v. State,
 
 774 So.2d 796, 798 (Fla. 3d DCA 2000);
 
 see Garcia v. State,
 
 622 So.2d 1325, 1331 (Fla.1993);
 
 Villella v. State,
 
 833 So.2d 192, 197 (Fla. 5th DCA 2002).
 

 In this case the toxicology results showed that the victim had a .21 blood alcohol level, traces of cocaine in the blood, and cocaine metabolites. The State successfully kept the jury from hearing the toxicology results. On cross-examination, the State then attacked the defendant’s lay observations of the victim’s intoxication on the theory that the defendant was not a qualified toxicologist. Further, the State’s parting shot was to make it appear that the defendant’s testimony that the victim “was acting crazy like on cocaine” was just an assumption. Of course, the State knew that the toxicology results (excluded on the State’s motion) confirmed the defendant’s observations. This cross-examination was totally improper. Because this cross-examination deprived the defendant of a fair trial, we must reverse for a new trial.
 

 III.
 

 We presume that on remand the State will not repeat the same error. At the retrial, therefore, there should be no issue of door-opening.
 

 The next question to be considered is whether the trial court erred in entering the order in limine. We conclude that, so long as the defendant takes the stand and testifies to his observation of the intoxication of the victim, the toxicology results are admissible.
 

 A.
 

 The parties have relied on cases decided under subparagraph 90.404(l)(b)l., Florida Statutes (2007).
 
 [1]
 
 That part of the Evidence Code addresses the circumstances under which evidence may be offered “of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the trait[.]” According to Professor Ehrhardt, “The conduct of the victim is material under the substantive criminal law only in a few situations. The most common situation is when the defense asserts that the accused acted in self-defense.” Charles W. Ehrhardt,
 
 Eh-rhardt’s Florida Evidence,
 
 § 404.6 at 207 (2009) (footnote omitted).
 

 One circumstance in which “evidence of the victim’s violent or aggressive character is admissible ... is to prove that the accused was reasonably apprehensive of the victim and that the defensive measures of the accused were reasonable.”
 
 Id.
 
 at 209. “In this situation, the evidence is being offered to prove the defendant’s state of mind, that is, the reasonableness of the defendant’s belief concerning imminent danger, rather than the conduct of the victim.”
 
 Id.
 
 at 209-10.
 

 For example, in
 
 Diaz v. State,
 
 747 So.2d 1021 (Fla. 3d DCA 1999), the defendant, ■victim, and two other men were drinking beer together. The defendant testified that he knew the victim had a reputation for violence when intoxicated, and that he perceived the victim was intoxicated.
 
 Id.
 
 at 1024. The evidence regarding this trait of the victim’s character — a reputation for violence when intoxicated — was admissible because the victim knew of that character trait and perceived that the defendant was intoxicated.
 

 The
 
 Diaz
 
 case is not squarely applicable here. In the present case, the defendant had never seen the victim before. He had no knowledge of the victim’s reputation or propensity for violence in general, or when
 
 *984
 
 intoxicated. The defense in this case did not seek to introduce any character or reputation evidence regarding the victim.
 

 The
 
 Diaz
 
 case is, however, instructive on one point. In
 
 Diaz,
 
 the defense sought to introduce the toxicology results for the decedent, which indicated that the victim had a blood alcohol level of .21 at the time of death.
 
 Id.
 
 at 1023. This court said that it was permissible for the defense to offer the toxicology evidence in the defendant’s case in chief. That was so because “[t]he medical examiner’s toxicological findings served ... to confirm the defendant’s perception that the victim was, in fact, intoxicated.”
 
 Id.
 
 at 1024.
 
 [2]
 

 Turning now to the present case, the defendant took the stand and testified that the victim was behaving erratically, threatened to kill him, and appeared to be intoxicated and under the influence of cocaine. Assuming that the defendant again takes the stand and so testifies at retrial, the toxicology findings will then be admissible “to confirm the defendant’s perception that the victim was, in fact, intoxicated.”
 
 Id. See also Warren v. State,
 
 577 So.2d 682, 684 (Fla. 1st DCA 1991) (“A homicide defendant is afforded wide latitude in the introduction of evidence supporting his self-defense theory. Where there is even the slightest evidence of an overt act by the victim which may be reasonably regarded as placing the accused apparently in imminent danger of losing his life or sustaining great bodily harm, all doubts as to the admissibility of evidence bearing on his theory of self-defense must be resolved in favor of the accused.”) (citation omitted). The toxicology evidence comes in because it is relevant evidence, and not under any theory of admissibility of character evidence under subparagraph 90.404(l)(b)2., Florida Statutes (2007).
 

 For the stated reasons, the conviction is reversed and the case remanded for a new trial.
 

 [1]
 

 . The trial occurred in 2007.
 

 [2]
 

 . The question in
 
 Diaz
 
 was whether the defense should have been allowed to make use of the toxicology report in cross-examination of the medical examiner during the State's case in chief. This court concluded that the cross-examination was properly disallowed because the medical examiner had not testified about the toxicology results in the State’s case in chief, and therefore the defense attempt at cross-examination regarding toxicology was beyond the scope of direct examination.
 
 Id.