701 So.2d 545 (1997)
Thomas James MOORE, Appellant,
v.
STATE of Florida, Appellee.
No. 82925.
Supreme Court of Florida.
October 2, 1997.
Rehearing Denied November 18, 1997.
*547 Nancy Daniels, Public Defender, Second Judicial Circuit, Tallahassee; and Bill Salmon, Gainesville, for Appellant.
Robert A. Butterworth, Attorney General; and Gypsy Bailey and Mark S. Dunn, Assistant Attorneys General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Thomas James Moore. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Moore's conviction and the sentence of death.
Moore was charged on February 18, 1993, with six counts: first-degree murder, attempted armed robbery, conspiracy to commit robbery, armed burglary, arson, and possession of a firearm by a convicted felon. The possession of a firearm count was not submitted to the jury. Moore was convicted of all remaining counts, and the jury recommended the death sentence.
As aggravation, the court found that Moore was previously convicted of the violent felonies of armed robbery and aggravated battery, committed the capital felony for the purpose of avoiding arrest, and committed the capital felony for pecuniary gain. In mitigation, the court gave Moore's age of 19 slight weight (he had been tried as an adult at age 15 for his prior armed robbery charge). Also, testimony as to Moore's character, offered as a nonstatutory mitigator, was given little value because the witnesses had little knowledge of Moore's criminal history. The judge followed the jury's recommendation and imposed the death penalty.
Moore was convicted of robbing and killing Johnny Parrishan adult resident of his neighborhoodand burning down Parrish's house. The two were friends, and Moore occasionally visited Parrish's home. On January 21, 1993, at about 3 p.m., Moore sat outside Parrish's house drinking with the victim. Moore claims that two other youths, Clemons and Gaines, approached the house. Moore claimed he saw the pair chase a neighborhood youth named "Little Terry" with a gun earlier that day, but Clemons denied it at trial. Clemons and Gaines testified that they had a conversation with Moore about robbing Parrish. Clemons said he agreed to go in the house with Moore, and Gaines was to be the lookout. Gaines said he stood outside but did not see either man go in. He said he heard two shots and then saw Clemons come out of the house and go back in. When Gaines started to walk away, Clemons caught up with him and told him Moore had shot Parrish.
Clemons said that when he and Moore went into the house, Moore pulled out a gun. Moore asked Parrish where his money was and then shot him when he got no response. Later, neighbors saw smoke in Parrish's house and ran in and pulled out Parrish. Parrish was already dead when exposed to the fire, and a fire investigator, Captain Mattox, said that there were two separate fires in the house, both of which were intentionally set.
A witness named Shorter testified that Moore brought him a bag of clothes and asked him to burn them. Shorter also testified that Moore told him he had shot Parrish and set fire to the house. Shorter stated that Moore said he shot Parrish twice, that Clemons ran out of the house, and that Moore took the top off a lawn mower he found and set it on fire to clean the house of fingerprints. Shorter did not call the police but did call his mother, who called the police.
A jail inmate, Jackson, testified that Moore told him that he did not mean to kill Parrish but had to because Parrish would recognize him. Another neighbor, Dean, testified that Moore asked him to rob Parrish.
*548 At the penalty phase, the State submitted evidence of Moore's prior convictions of armed robbery and aggravated battery. Also, the State called Parrish's daughter for "victim impact evidence" limited to the fact that Parrish was a good man. The defense called Moore's mother, who testified that Moore was a bright child who had been troubled because his father, who had died when Moore was young, was married to another woman. Other family and friends testified that Moore had been a good student and a polite young man.
Moore presents seven claims on appeal: (1) it was error to limit Moore's cross-examination of two State witnesses on crucial points of fact; (2) it was error to limit cross-examination of a third witness, refuse to hear a proffer, and deny a motion for mistrial; (3) it was error when the court made prejudicial remarks in the presence of the jury commenting on evidence and disparaging the defense, denying Moore due process; (4) it was error to admit a witness's testimony that Moore was in possession of a firearm two days after the victim's death; (5) it was error to admit a copy of codefendant Clemons' written statements to police into evidence; (6) it was error to admit victim impact evidence which did not comport with the section 921.141(7), Florida Statutes (1995); and (7) it was error to allow the State to use mitigation as nonstatutory aggravation during penalty phase closing arguments. We find all of Moore's claims except one to be without merit; one claim of error has merit but we find the error to be harmless. Additionally, we have conducted a review of the record and find competent and substantial evidence to support his conviction and sentence.
In issues one and two Moore argues that the trial court improperly limited his cross-examination of three defense witnesses: Gaines, Clemons, and Mattox. Moore's counsel was prohibited from asking Gaines whether he and Clemons had chased a boy named Little Terry while carrying a gun on the day the victim was killed. When counsel asked to make a proffer, the judge said:
THE COURT: First off, he has already said he didn't see [Clemons], period. Then you kept saying you didn't see him at 10:00, you didn't see him at 12:00....
[DEFENSE ATTORNEY]: What I want to proffer at this point around noontime of that day Mr. Clemons and Mr. [Gaines] entered into the Grand Park area.
....
[DEFENSE ATTORNEY]: And they chased a young fellow named Little Terry, and Clemons was armed with a gun at that time.
THE COURT: You asked him was he there at that time. He testified he wasn't even there. I mean, I can't make him testify to what you want him to testify to.
The Court refused to allow the questions, stating:
THE COURT: ... I don't know if he is lying or telling the truth. He said he wasn't with him. Now, you know, you can ask him, you know, 11:30, how about 11:00, 11:40, you can go on and on. It doesn't prove anything. What you have got is you have got his testimony now. If you want to prove he is lying, [so be it].
[DEFENSE ATTORNEY]: Yes, sir.
THE COURT: Let's get on with it. But not through him.
Defense counsel was allowed to ask if Gaines went to the park with Clemons, if Gaines saw Clemons with a gun, and if Gaines saw Little Terry. Gaines answered "no" to all three questions.
When Clemons testified, defense counsel asked what he had done with the gun he possessed on the day of the murder. The judge sustained the State's objection, stating that there was no evidence that Clemons actually possessed a gun then. After Clemons denied possessing a gun that day, defense counsel asked a series of questions about Little Terry. Defense counsel then asked again whether or not Clemons was armed. The court sustained the State's objection, stating that the question was repetitive.
Captain Mattox, an arson investigator with the Jacksonville Fire Department, testified that there were no accelerants present in the fire set at Parrish's house. Defense counsel asked whether the department had access to *549 the Office of the Florida Fire College Laboratories if there was some question as to whether flammable liquids had been used. After Mattox answered "yes," defense counsel asked if those laboratories had gas chromatography machines. The judge sustained the State's objection as to the relevance of the question. Defense counsel was prohibited from making a proffer of the question, and the court denied defense counsel's request for a mistrial.
Moore's claim that it was error to limit the cross-examination of these three witnesses is without merit. The United States Supreme Court has stated that "trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); see also State v. Ford, 626 So.2d 1338, 1347 (Fla.1993). Limitation of cross-examination is subject to an abuse of discretion standard. See, e.g., Geralds v. State, 674 So.2d 96, 100 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996); Jones v. State, 580 So.2d 143, 145 (Fla.1991). Here, the judge clearly spelled out his reasons for limiting the cross-examination: in each instance the questions were either repetitive or irrelevant. We find no abuse of discretion.
In issue three, Moore argues that the court improperly commented on the evidence and disparaged the defendant. In Jones v. State, 612 So.2d 1370 (Fla.1992), we made it clear that the contemporaneous objection rule applies to such comments. Id. at 1373. The comments here were not objected to at trial. However, we have reviewed the record and find that the statements now objected to by Moore, when viewed in context, did not constitute improper comment. The court was seeking to control the pace and conduct of the trial and only rebuked counsel for being repetitive. We have clearly held that trial courts also have broad discretion in the procedural conduct of trials. Rock v. State, 638 So.2d 933, 934 (Fla.1994). These comments did not constitute error.
Claim four, in which Moore argues that it was error to admit a witness's testimony that Moore possessed a firearm two days after the victim's death, has merit, but we find that the error was harmless. Before witness Dawsey testified that Moore waved a gun at him, defense counsel objected to the question and had the State proffer testimony. The State advised that Dawsey was expected to say that the "defendant showed him a gun and said, `If they don't stop saying that I killed the victim, somebody is going to be dead for real,' and he showed him a black snub-nosedlong-nosed .33." Defense counsel objected, arguing that there was no evidence that the gun had anything to do with the victim's death and all it would show was that the defendant habitually carried a gun for no purpose. The State argued that it showed a guilty mind and that he had threatened a witness. The judge allowed the question, stating, "If it's all the same incident, he showed it to him and testified to it and made the statement to him, I'm going to let him testify to that. Verbal acts or demonstrative acts by the defendant, they are certainly admissible against him I think." The substance of Dawsey's testimony matched the proffer.
Although a party's own statement, offered against the party, can satisfy the admissions exception to the prohibition against hearsay, it is still subject to the general requirement that only relevant evidence may be admitted. See § 90.803(18)(a), Fla. Stat. (1995); § 90.402, Fla. Stat. (1995). Here, the evidence was not relevant to whether or not Moore committed the murder, so it was error to admit it. Evidence which tends only to show bad character or propensity is not relevant and should not be admitted. § 90.404(2)(a), Fla. Stat. (1995); Bryan v. State, 533 So.2d 744, 746 (Fla.1988). The evidence could only show that Moore was upset because people were accusing him of committing the crime or that he regularly carried a gun. Neither piece of information helps establish whether or not he killed the victim.
*550 However, the erroneously admitted testimony was harmless. Error is harmless where "there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). Because there was direct evidence from other witnesses that Moore possessed a gun on the actual day of the murder and direct evidence that Moore shot the victim, there is no reasonable possibility that the error contributed to the conviction here.
Moore's fifth claim, that it was error to admit into evidence a copy of Clemons' written statement to the police, is without merit. Clemons was another defendant charged in connection with the murders, and his statement was admitted during the testimony of Detective Conn. The following discussion took place at sidebar:
[DEFENSE ATTORNEY]: Your Honor, if the State is attempting to introduce this statement to rebut a charge of recent fabrication it must be limited to solely those portions which I confronted the witness with ... if they want the whole nine yards. There are certain matters I didn't confront Mr. Clemons with.
....
[DEFENSE ATTORNEY]: Your Honor, the State has introduced testimony he's given us. He's already testified as to that. He has been confronted with various portions of the written statement. The whole thing is not relevant and it's not qualified for any hearsay.
THE COURT: It's a prior consistent statement.
....
[DEFENSE ATTORNEY]: If they want to strike out what portions are consistent with those matters raised in question....
THE COURT: [That would allow the jury] to take things out of context, which you didn't want to do [in an earlier discussion of another issue]. You can't do one sentence or, you know, three words.
The court noted that Clemons had been and would continue to be available for corrections or questioning and ruled that the statement was admissible as a prior consistent statement. We find no abuse of discretion here. During Clemons' testimony, defense counsel asked about lying to the police, the nature of the charges facing Clemons, and the nature of any plea agreements or reduction of prison time for Clemons. This clearly implied recent fabrication or improper motive. Evidence which is otherwise hearsay is "not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication." § 90.801(2)(b), Fla. Stat. (1995).[1] It was not error to admit the statement.
Moore's sixth claim, that the judge admitted improper victim-impact evidence, is meritless. Doris Parrish, the victim's daughter, testified as to the impact of her father's death:
Q. Ms. Parrish, could you please tell these jurors what was unique about John Edward Parrish, what was unique about him in his community?
A. My dad was a good man. He never bothered nobody. And he was very free-hearted, you know. He loved everybody.
The judge ruled that the testimony would be allowed, after the State argued the evidence did show uniqueness in a community "where shots are heard routinely and where crime occurs routinely."
The United States Supreme Court has held that the Eighth Amendment to the United States Constitution does not bar the State from presenting evidence about the *551 victim and the impact of the murder on the victim's family wherever state law permitted its admission. Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). Accordingly, the legislature enacted section 921.141(7), Florida Statutes (1993), stating that victim-impact evidence would be allowed where it showed "the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." See Ch. 92-81, § 1, Laws of Fla.
We find no abuse of discretion in allowing the evidence. As we said in Bonifay v. State, 680 So.2d 413 (Fla.1996):
Clearly, the boundaries of relevance under the statute include evidence concerning the impact to family members. Family members are unique to each other by reason of the relationship and the role each has in the family. A loss to the family is a loss to both the community of the family and to the larger community outside the family.
Id. at 419-20. Here, the judge also found that because of the nature of the specific community in which the victim lived, the evidence was admissible to show a loss to that community. Therefore, we find no abuse of discretion in admitting the evidence.
As his final issue, Moore argues that the State improperly asked the jury to use mitigation as aggravation in its penalty-phase closing argument. We find no merit to this issue. Moore questions the following statement from the State's closing argument:
I would submit to you that the Defense put on a lot of mitigation. They brought in, as I told you, all of the wonderful people who had known this defendant his entire life, who had nurtured him, who loved him, who spent holidays with him, who said that he was treated just like their son, their brother, their cousin. That he did well in school. That he played football. That he had a normal life. And, ladies and gentlemen, it may sound like mitigation, but to me it's the mostwell, I would submit to you that it's the most aggravating factor of all.
Defense counsel objected to the content of the statement at the close of the arguments, but the judge overruled the objection.
Wide latitude is permitted in arguing to a jury. Breedlove v. State, 413 So.2d 1, 8 (Fla.1982). It is within the judge's discretion to control the comments made to a jury, and we will not interfere unless an abuse of discretion is shown. Occhicone v. State, 570 So.2d 902, 904 (Fla.1990); Breedlove, 413 So.2d at 8. The judge properly instructed the jury that closing argument should not be considered as evidence in the case or as the instruction on the law. He went on to instruct the jury that the only aggravating factors it was allowed to consider were those specifically defined by him; the judge also gave the correct instruction on mitigation. We do not find that prosecutor's comments to be of such a nature as to taint the jury's recommendation of death; accordingly there was no abuse of discretion. See Crump v. State, 622 So.2d 963, 972 (Fla. 1993); Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985).
Additionally, although Moore does not challenge the proportionality of the death penalty here, we have examined other cases in which we have imposed the death penalty and find that Moore's sentence is proportionate. The jury recommended death by a vote of nine to three. The trial court found three aggravating factors: 1) Moore had been convicted of the prior violent felonies of armed robbery and aggravated battery; 2) he committed the murder to avoid arrest; and 3) he committed the murder for pecuniary gain. Although the court found one statutory mitigating factorthat Moore was nineteen years oldit was given only slight weight since Moore was first treated as an adult before the court at the age of fifteen. There were no nonstatutory mitigating factors. We have upheld the death sentence in other cases based on only two of the three aggravating factors present here. In Pope v. State, 679 So.2d 710 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 975, 136 L.Ed.2d 858 (1997), we held the death penalty was proportionate where there were two aggravating factors (the murder was committed for pecuniary gain and the defendant had been convicted of a prior violent felony), two statutory mitigating circumstances (commission *552 while under the influence of extreme mental or emotional disturbance and impaired capacity to appreciate the criminality of the conduct), and three nonstatutory mitigating circumstances (defendant was intoxicated, committed the murder subsequent to a disagreement with his girlfriend, and was under the influence of mental or emotional disturbance). In Melton v. State, 638 So.2d 927 (Fla.1994), we held the death penalty was proportionate where there were two aggravating factors (the murder was committed for pecuniary gain and the defendant had been convicted of a prior violent felony) and some nonstatutory mitigation. We find that the death penalty was proportionate here. See also Consalvo v. State, 697 So.2d 805 (Fla. 1996) (holding death penalty was proportionate where there were two aggravating factorsavoiding arrest and commission during the course of a burglarywith some nonstatutory mitigation).
Having considered all of Moore's claims as discussed above, we affirm his convictions and sentence of death.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., concurs as to conviction and concurs in result only as to sentence.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, Judge, concurring in part and dissenting in part.
I am troubled in this case because two of the most important aspects of our review, sufficiency of the evidence and proportionality of the death sentence, have not been briefed. Because these are fundamental issues that we must confront, I would require the parties to brief these issues rather than considering them without briefing. Staff review of the record is no substitute for appellate advocacy, and appellant is obviously entitled to the benefit of competent counsel on appeal in addressing these fundamental issues. See Hill v. State, 656 So.2d 1271, 1272 (Fla.1995).
Further, I cannot agree with the majority that it was permissible for the State to tell the jury that the appellant's entire case for mitigation was "the most aggravating factor of all" in determining whether appellant should be sentenced to death. This assertion constitutes a violation of this Court's consistent and repeated admonitions that the only matters that may be asserted in aggravation are those set out in the death penalty statute. Grossman v. State, 525 So.2d 833 (Fla.1988); Floyd v. State, 497 So.2d 1211 (Fla.1986); Drake v. State, 441 So.2d 1079 (Fla.1983); Purdy v. State, 343 So.2d 4 (Fla.1977). A jury can hardly be expected to engage in a reasoned process of balancing aggravation and mitigation when it has been told by the State that it can and should add the defendant's evidence of mitigation to the aggravation side of the scales, especially when this assertion is given legitimacy by the trial court's rejection of an objection.
NOTES
[1] See also Charles W. Ehrhardt, Florida Evidence § 801.8, at 945 (1995 ed.) (footnote omitted): "If it is alleged that the testimony of a witness at the trial is the result of a bribe, evidence of a prior consistent statement of the witness before the bribe allegedly occurred is highly probative that the bribe was not the reason for the testimony of the witness at the trial. If the testimony at the trial and a statement of the witness before an event that allegedly influenced the trial testimony is consistent, an allegation of improper influence has been negated. A prior consistent statement is admissible to rebut the cross-examiner's allegation that an event occurred which gave the witness a motive to falsify."