PARIENTE, J.,
dissenting.
I fully concur in Justice Quince’s dissent as to why the confession should be suppressed, and I write separately to explain why I would also reverse for a new penalty phase because of the multiple improper closing arguments by the prosecutor. Below is a list of just some of the prosecutor’s most flagrant violations of this Court’s prior admonitions in our death penalty jurisprudence:
(1) creating an imaginary script and engaging in golden rule arguments by putting words in the five-year-old victim’s mouth — “Where’s mommy? Where’s mommy?” — and asking the jurors to go back to the deliberation room, sit for five minutes, and “think of the fear” the victim experienced;
(2) cloaking the State’s case with legitimacy by commenting that the State only brings cases in which the death penalty is justified;
(3) impugning the integrity of defense counsel by stating that counsel was going to get up and “scream” about the State’s aggravating circumstances because by screaming “loud enough,” counsel could “drown out the shouts” of the aggravators “written in stone”;
(4) denigrating the defense and implying that mitigation should be used as aggravation, including rhetorically asking the jurors, “Why [were] those 13 people brought in to you? One or two would have done it,” and labeling the defense’s cross-examination of a State witness as an “attack”;
(5) characterizing the defendant as being “violent ... since birth” in order to establish aggravation despite a lack of evidence drawing such a connection; and
(6) asserting that recommending a life sentence would essentially be an easy way out.
This already lengthy tabulation of improper commentary alone was enough to warrant reversal. Yet, the list goes on.
The majority rightfully condemns several of these arguments, but stops short of concluding that overall, the cumulative ef- *864 feet of the improper arguments deprived Braddy of a fair penalty-phase trial. See majority op. at 855-56. I respectfully disagree with the majority’s assessment for two reasons. First, a careful review of the prosecutor’s entire closing argument in this case reveals that the defense objected to many of the numerous improper prose-cutorial comments. Indeed, by my count, defense counsel interposed approximately twenty-five objections, but only five of those objections were sustained. And second, most of the prosecutor’s arguments are similar, if not identical, to those this Court has routinely condemned in other death penalty cases.
Here, defense counsel objected to many of the improper comments, but the objections were largely overruled, and even when sustained, there was no meaningful way to erase from the jurors’ minds the impact of the litany of improper arguments that they had heard. Because this is not a case where the attorney fails to object to any of the improper closing arguments, the majority is incorrect in concluding that the applicable standard here is based solely on fundamental error — even if reviewed cumulatively. See majority op. at 855-56 (reviewing the “four areas of concern” determined to be improper and concluding that each did not “constitute fundamental error”). After considering the totality of the prosecutor’s penalty-phase closing argument in this case, I would hold that the objected-to comments, when viewed in conjunction with the unobjected-to comments, deprived Braddy of a fair penalty-phase proceeding so as to warrant a new penalty phase.
I begin with an examination of the different categories of objectionable argument. The first category of improper argument involves the prosecutor’s attack of defense counsel’s presentation of the defense — a theme that permeated the prosecutor’s penalty-phase arguments. The prosecutor began this theme at the outset of her closing argument when she asserted that defense counsel was going to get up and “scream” about the State’s aggravating circumstances. The trial court sustained Braddy’s objection to this characterization and cautioned the prosecutor to not “do that.”
Failing to heed the trial court’s warning, the prosecutor committed the same error when returning to a discussion of the aggravating circumstances. Specifically, the prosecutor told the jury that defense counsel was “going to be arguing about the [aggravators] and screaming about the ones they can [bjecause if you scream loud enough, maybe you can drown out the shouts of the ones that are written in stone.” (Emphasis added.) Braddy again objected, and the trial court sustained the objection, advising the prosecutor not to use the word “shout.” As the majority agrees, these verbal attacks were improper attempts to impugn the personal integrity of opposing counsel and the manner in which counsel conducted the defense. See majority op. at 853-54.
Despite the trial court’s prior admonishments, toward the conclusion of her closing argument, the prosecutor castigated defense counsel’s cross-examination of Detective Hoadley by repeatedly classifying counsel’s questioning as an “attack” on the police in an effort to show the police had lied to establish the existence of certain aggravating circumstances.[12] It has been held to be improper, however, for a prose- *865 eutor to ridicule a defendant or his theory of defense. Servis v. State, 855 So.2d 1190, 1194 (Fla. 5th DCA 2003). The majority correctly recognizes that it is entirely within defense counsel’s role to question the evidence the State presents to establish aggravating circumstances. See majority op. at 854. Here, labeling proper actions taken by defense counsel as an “attack” was tantamount to an argument that Braddy was somehow prohibited from calling into question testimony proffered by one of the State’s witnesses. Exacerbating this error, the prosecutor’s concluding statement in this line of argument that Detective Hoadley had “no reason to concoct anything” because he did not “get paid extra to concoct things” bordered on an impermissible attempt to bolster or vouch for the officer’s credibility. See Williamson v. State, 994 So.2d 1000, 1013 (Fla.2008) (“This Court has long recognized that *[i]t is improper to bolster a witness’ testimony by vouching for his or her credibility.’ ” (quoting Gorby v. State, 630 So.2d 544, 547 (Fla.1993))). In sum, the prosecutor’s recurring disparagement of defense counsel’s presentation of the defense in this case was both improper and needlessly inflammatory.
The prosecutor then continued in her attempt to denigrate the defense and its case. The second category of argument shows that the prosecutor denigrated Braddy’s mitigation presentation by im-permissibly turning mitigation into non-statutory aggravation. When countering the mitigating evidence defense counsel offered to the jury through the testimony of thirteen lay witnesses, the prosecutor argued as follows:
[PROSECUTOR]: You heard in the last two days — actually, yesterday and the day before, you heard from a lot of nice people. I told you that in opening statements. I told you that this is a lovely, lovely, lovely family. This defendant was privileged to be from this family. ...
Now, it wasn’t easy. Like Mrs. Brad-dy told you, it wasn’t easy in the 40s, 50s, 60s being an African-American family, but they managed. And their children were fed, their children were disciplined, and their children were loved. This defendant had everything that anybody could want. You know, his family highlights, highlights the fact that the aggravators outweigh the mitigators.
(Emphasis added.) Braddy objected to this statement, but the trial court overruled the objection, instructing the prosecutor to proceed. The prosecutor continued:
[PROSECUTOR]: His family is not on trial. I know you all like them. We all like them. His family is not on trial. His family has already been hurt by this defendant. Why were these people brought in to demonstrate things to you? 12, 13 of them. Not only family, but the friends. Everybody, everybody became somebody.
The defendant, he had talents, he could have been somebody too. But see what he does is, he might look like a Braddy, he might walk like a Braddy, he might talk like a Braddy, he may even have been raised as a Braddy. But if you peel away the wrapper, there’s no Braddy inside.
[DEFENSE COUNSEL]: Objection. Improper argument.
THE COURT: Overruled.
Go ahead, please.
[PROSECUTOR]: All 13. Why are those 13 people brought in to you? One or two would have done it.
[DEFENSE COUNSEL]: Objection. Improper argument.
THE COURT: Overruled.
*866 (Emphasis added.) After the prosecutor finished her closing argument, Braddy moved for a mistrial based on this line of argument, asserting that the prosecutor impermissibly turned Braddy’s mitigation into aggravation.. The trial court denied the motion and ruled that the prosecutor’s statements were fair comments on the weight of the evidence.
This Court has “long recognized that a prosecutor cannot improperly denigrate mitigation during a closing argument.” Franqui v. State, 59 So.3d 82, 98 (Fla. 2011) (quoting Williamson, 994 So.2d at 1014). Although the jury can draw an unfavorable comparison when the defendant’s friends and family members have become productive members of society, see Lugo v. State, 2 So.3d 1, 13 (Fla.2008), in this case, the prosecutor claimed that members of Braddy’s family, who were presented as mitigation witnesses, actually served to highlight the fact that the aggra-vators outweighed the mitigators. To reach the conclusion that this line of argument was permissible, the majority relies on Moore v. State, 701 So.2d 545, 551 (Fla.1997). See majority op. at 855.
In Moore, this Court held that the trial court did not abuse its discretion in overruling a defendant’s objection to the State’s penalty-phase closing argument that mitigation evidence of the defendant’s normal, loving upbringing “may sound like mitigation, but ... I would submit to you that it’s the most aggravating factor of all” because the State had wide latitude in arguing to a jury and the trial court issued proper instructions. 701 So.2d at 551. However, I cannot agree with the majority or Moore to the extent that either authorizes the prosecutor to assert that Braddy’s loving family is the reason the aggravators outweigh the mitigators.
Likening mitigation to aggravation directly contradicts the Court’s prior admonitions that only matters set out in the death penalty statute may be asserted in aggravation. See Zack v. State, 911 So.2d 1190, 1208 (Fla.2005); Knight v. State, 746 So.2d 423, 431 n. 10 (Fla.1998). In this case, the prosecutor should not have told the jury to essentially add the defendant’s evidence of mitigation to the aggravation side of the scale. Then, to make matters worse, the prosecutor unjustly criticized defense counsel for bringing in many friends and family members to testify on Braddy’s behalf. The trial court should have sustained Braddy’s objections.
The third category of objectionable argument centered on the prosecutor’s attack of Braddy’s character absent an evi-dentiary basis for doing so. While in the process of explaining the prior violent felony aggravating circumstance, the prosecutor argued:
[PROSECUTOR]: The defendant has previously been convicted of a violent felony. Not one, not two. Twelve. Four separate crimes, four separate dates. This is a guy who cannot live out in the community without hurting someone.
Now, ladies and gentlemen of the jury, you don’t just wake up one morning and say I’m going to be violent today. I will submit to you that this has been since birth. He’s been this way since birth. And no matter what he says or no matter what he does with his family, this is cruel, heinous.”
(Emphasis added.)[13]
Prosecutorial comments that inflame the passions and prejudices of the jury with *867 elements of emotion and fear by characterizing the defendant as an evil person are impermissible. See Brooks v. State, 762 So.2d 879, 900 (Fla.2000) (holding that the State improperly characterized the defendants as violent persons by repetitious use of phrases such as “true deep-seated, violent character,” “people of longstanding violence,” “they commit violent, brutal crimes of violence,” “it’s a character of violence,” and “both of these defendants are men of longstanding violence, deep-seated violence, vicious violence, brutal violence, hard violence ... those defendants are violent to the core, violent in every atom of their body”); Urbin v. State, 714 So.2d 411, 420 n. 9 (Fla.1998) (holding that the State improperly referred to the defendant’s “true, violent, and brutal and vicious character” and impermissibly characterized the defendant as a “cold-blooded ... ruthless killer,” who exhibited “deepseeded [sic] violence ... vicious violence ... brutal violence” because he was “violent to the core, violent in every atom of his body”). This is especially true where a blatant appeal to the jury’s emotions lacks any evidentiary support.
While I agree with the majority that the prosecutor’s comment in this instance was not as pervasive as the descriptions this Court deemed to be impermissible in Brooks and Urbin, this comment was nonetheless improper, and there was no evidence introduced to establish (or that could possibly ever establish) that Braddy had been violent “since birth.” The prosecutor properly drew on the facts in evidence regarding Braddy’s problematic childhood, but she crossed the line into impermissible argument by dehumanizing Braddy based on facts not in evidence. “As officers of the court, prosecutors must ensure, to the extent possible, a dispassionate and objective jury deliberation process.” Wade v. State, 41 So.3d 857, 880 (Fla.2010) (Pariente, J., specially concurring, with three other Justices concurring), cert. denied, — U.S. -, 131 S.Ct. 1004, 178 L.Ed.2d 835 (2011). With this comment, however, the prosecutor improperly attempted to incite the jury’s passions.
This impropriety was further compounded by the prosecutor’s prohibited future dangerousness argument — that Braddy was “a guy who cannot live out in the community without hurting someone.” Florida’s death penalty statute does not authorize a future dangerousness aggravating factor, see Kormondy v. State, 703 So.2d 454, 463 (Fla.1997), and a future dangerousness nonstatutory aggravating factor does not exist in this state, see Knight, 746 So.2d at 431 n. 10. Therefore, prosecutorial arguments injecting a defendant’s future dangerousness into the proceeding are objectionable. See id. (holding that the prosecutor’s comment that the defendant would “kill, and kill and kill again” was probably subject to a valid objection as an impermissible future dangerousness argument); see also Walker v. State, 707 So.2d 300, 313-14 (Fla.1997) (finding improper the prosecutor’s query of a neuropsychologist, “[w]ell, do you think ... [Walker] may kill again?”).
The fourth category of inappropriate argument related to the prosecutor’s evocative exhortation of what the five-year-old victim experienced prior to her death. Clearly, the facts of this crime are horrendous, but prosecutors must take care not to further inflame the emotions of the jury in the penalty phase through impermissible imaginary scripts or commentary that ask the jury to put themselves in the position of the victim. When explaining to the jury why the HAC aggravator was met in this case, the prosecutor created an emotional, imaginary script of what the victim might have said while she was traveling in the town car alone with Braddy:
*868 [PROSECUTOR]: What happens? It’s dark and they are driving. And they are driving, and they are driving, and they are driving.

Where’s mommy? Where’s mommy?

(Emphasis added.) Braddy objected to this argument, and although the prosecutor’s script lacked an evidentiary basis, the trial court immediately overruled the objection and requested the prosecutor to proceed. The prosecutor returned to reasonable inferences that could be drawn from the evidence, but then asked the jurors to imagine themselves in the victim’s position:
[PROSECUTOR]: ... He takes her to [a] place where he knows she’s going to die. He takes her to a place where he knows it’s probably going to be nothing left of her. It’s dark, it’s pitch black. You’ve seen all of this. And then, you get thrown in.
Now, did she hit the water? She hit the water and it was lights out. She hit the rocks, it was lights out.
I’m not going to tell you anything that happened after that, after she fell, because it’s our thoughts and fervent prayers that she did not feel it at the time. But the time between U.S.-27 and when she gets hit in the head, I want you to go back there and sit for five minutes and let yourself think of the fear.
(Emphasis added.) Braddy again objected, citing it as a golden rule argument. The trial court sustained the objection and told the jury to disregard the prosecutor’s last statement. Braddy reserved the right to move for a mistrial, which the trial court later denied.[14] Then, notwithstanding the trial court’s admonition, the prosecutor repeated the same impropriety, inserting the pronoun “you” in place of the victim’s name:
You’re five. You jumped out of a moving car. You seen [sic] what he's done to your mother, and you're terrified.
[PROSECUTOR]: ... I would submit to you that that aggravator has been more than proven. Leaving a five-year-old in a place like that to die, whether you throw her in or she falls in — it’s even worse probably if you left her there to die and drive away and she fell in. You even have more time to think about it. You have more time to be afraid.
(Emphasis added.) The line of argument in this instance bore a striking resemblance to the prosecutor’s impermissible argument during her guilt-phase closing.[15]
This Court has defined a golden rule argument as one in which an attorney requests that the jurors place themselves in the victim’s position, imagine the victim’s pain and terror, or imagine how they would feel if the victim were a relative. Pagan v. State, 830 So.2d 792, 812 (Fla.2002); see also Williamson, 994 So.2d at 1006. A “subtle form” of the golden rule argument arises when the prosecutor creates an “imaginary scenario,” which “asks the jurors to put his or her own imaginary *869 words in the victim’s mouth” or which employs an “imaginary scenario” that speculates as to a victim’s final moments. Williamson, 994 So.2d at 1006 (citing Urbin, 714 So.2d at 421) (concluding that the prosecutor had engaged in a subtle golden rule argument by creating an imaginary script demonstrating that the victim was shot while pleading for his life); Mosley v. State, 46 So.3d 510, 521 (Fla.2009). This Court has repeatedly warned that golden rule arguments are prohibited. See Mosley, 46 So.3d at 520; Merck v. State, 975 So.2d 1054, 1062 (Fla.2007).
The prosecutor in Braddy’s case plainly disregarded the Court’s consistent criticism of this type of improper and speculative commentary. The prosecutor unduly created, aroused, and inflamed the sympathy, prejudice, and passions of the jury to the detriment of the accused, see Urbin, 714 So.2d at 421, when she unnecessarily added imaginary words to the five-year-old victim’s mouth. The statement concerning how she possibly reacted was not a fact in evidence. Additionally, the prosecutor improperly invited the jury to sit for five minutes in order to imagine the terror the victim experienced in the final moments before her death. Cf. Davis v. State, 928 So.2d 1089, 1121-22 (Fla.2005) (holding that the prosecutor’s comments requesting the jury to sit in silence while deliberating for the amount of time the victim would have been conscious prior to his death was possibly improper when discussing the HAC aggravator). “Prosecutors have an obligation not to inject ‘elements of emotion and fear into the jury’s deliberations,’ ” Wade, 41 So.3d at 880 (Pariente, J., specially concurring, with three other Justices concurring) (quoting Urbin, 714 So.2d at 419), and this type of emotional and inflammatory appeal to the jurors has no place in a prosecutor’s closing argument.
The fifth area of improper argument involved the prosecutor’s preliminary focus on the State’s decision to seek the death penalty in this case. During her introductory remarks to the jury, the prosecutor commented upon the fact that the death penalty does not apply in every murder ease:
[PROSECUTOR]: The death penalty is not applied to every murder case. It just isn’t because, of course, each case is taken on its own merits. Each case is taken on its own fact. Each defendant is looked at for his own merits, his own background. Of course we’ll get to that later when we start to talk.
(Emphasis added.) Braddy objected to these comments on the ground that the State was impermissibly “vouching for ... the death penalty.” After the trial court overruled Braddy’s objection, the prosecutor further commented about the State’s process for deciding whether to seek the death penalty in first-degree murder cases:
[PROSECUTOR]: In determining that, where the State is seeking the death penalty, what we have to look at are those murder cases that are so egregious, those defendants who commit acts that are so egregious, who have backgrounds that are so bad that they have earned the death penalty.
We don’t just do it by putting the numbers in a computer. We take it to a jury of his peers, a jury of everyone’s peers. We all represent — you all represent everyone, him and everyone in this courtroom. We take it to you because we say all right, those are 12 people who are going to be able to weigh those factors.
The State’s burden is to prove the aggravators beyond a reasonable doubt. And the Legislature has set out what the determination is that the State has to *870 make in bringing a ease like this to you as a death penalty case, okay.
(Emphasis added.) Following this statement, Braddy interposed another objection, but rather than sustaining the objection, the trial court advised the prosecutor to “[m]ove on to what [she] expect[ed] the evidence showed or [had] shown.” The prosecutor then proceeded to discuss aggravating factors the evidence had established, later referring back to this line of argument by stating “[t]his is a case where the defendant has earned the death penalty.”
Prosecutorial comments reflecting upon the State’s decision to seek the death penalty in a given case transcend the limitation of appropriate closing argument because they are irrelevant and “tend[] to cloak the State’s case with legitimacy as a bona-fide death penalty prosecution, much like an improper ‘vouching’ argument.” Brooks, 762 So.2d at 901-02; see also Ferrell v. State, 29 So.3d 959, 987 (Fla.2010) (holding that the prosecutor improperly argued that the defendant deserved the death penalty when the prosecutor stated that the State has an obligation to seek the death penalty in a case where the facts surrounding the murder demand it); Mosley, 46 So.3d at 522 (“[W]e have condemned comments where the prosecutor states that the death penalty is sought only after the State Attorney’s Office determines that the particular case warrants the imposition of the death penalty.”).
As in Brooks, Ferrell, and Mosley, the prosecutor in this case explained to the jury that although the State does not seek the death penalty in every first-degree murder case, it does seek the death penalty when warranted by the facts. While this is certainly a true statement, the prosecutor impermissibly implied that the State, in its expertise, had already made the careful decision required for the propriety of imposing the death penalty. This argument, occurring at the onset of closing, was clearly improper, and the trial court should have sustained the objections.
The final category of objectionable argument in this case concerned the prosecutor’s intimation that a recommendation of life imprisonment would be to “do what’s easy.” Specifically, in a preemptive rebuttal to the defense’s argument that the jury should recommend a life sentence, the prosecutor argued:
[PROSECUTOR]: ... Life does means [sic] life. Is that the appropriate sentence here?
It’s not what’s good enough. It’s what’s appropriate. That’s what you have been charged with doing as a jury, as a jury in this state, as sworn jurors, as people who have sworn to follow the law as it is set out in these instructions. That’s your job. Not to do what’s good enough. Not to do what’s easy. Your job is to do the hard one. Your job is to give him the consideration he’s entitled to and the State the consideration that its [sic] entitled to.
(Emphasis added.)[16]
In Urbin, this Court condemned a pros-ecutorial argument that expressed the prosecutor’s concern that the jury would be “tempted to take the easy way out” by not fully carrying out its responsibility of weighing the aggravating and mitigating circumstances. 714 So.2d at 421. Similar comments were subsequently found by this Court to be improper in both Brooks and Ferrell as misstatements of the law. See Brooks, 762 So.2d at 903 (“I’m concerned ... that you may want to take the easy way out and not weigh out all the aggravating circumstances, not analyze the law or *871 the facts, take the easy way out and just quickly vote for life.”); Ferrell, 29 So.3d at 987 (“Some of you may be tempted to take the easy way out, and by that, I mean, you may be tempted not to weigh all of these aggravating circumstances and to consider the mitigating circumstances.”).
While the comment made by the prosecutor in Braddy’s case might not be as egregious as those condemned by this Court in Urbin, Brooks, or Ferrell, the argument here nevertheless implied that any sentence less than death was impermissible and would be an abdication of the jury’s responsibility. However, as I expressed in Wade, and a majority of the Court agreed, “[a] jury’s recommendation of life is not the ‘easy way out’ ” because this Court has “now made absolutely clear by [its] newly adopted Standard Jury Instructions [that] a jury is never obligated or required to recommend death under the law in this state.” Wade, 41 So.3d at 880 (Pariente, J., specially concurring, with three other Justices concurring) (citing Fla. Std. Jury Instr. (Crim.) 7.11 (Penalty Proceedings — Capital Cases); In re Standard Jury Instructions in Criminal Cases — Report No. 2005-2, 22 So.3d 17, 22 (Fla.2009)). Clearly, the prosecutor should have refrained from making this type of “easy-way-out” argument.
Because this is not a case where defense counsel failed to object to any of the above improper closing arguments, in my view, the majority is wrong to conclude that the applicable standard for reviewing these cumulative errors is based only on fundamental error. Rather, an item-by-item review of the improper closing arguments reveals that three standards are implicated: harmless error, abuse of discretion, and fundamental error.
Braddy’s claim with respect to the prosecutor’s improper attempt to vouch for the death penalty, for example, should be reviewed under the less deferential harmless error standard. A trial court’s overruling of defense counsel’s objection to an improper prosecutorial argument that should have otherwise been sustained is reviewed for harmless error. See Snelgrove v. State, 921 So.2d 560, 568 (Fla.2005); Doorbal v. State, 837 So.2d 940, 956-57 (Fla.2003). Here, defense counsel made a specific objection as to this issue, and the trial court improperly overruled the objection.
Regarding the prosecutor’s prohibited golden rule argument, this claim of error should be reviewed for an abuse of discretion. Defense counsel specifically objected and moved for a mistrial, thereby preserving this issue. James v. State, 695 So.2d 1229, 1234 (Fla.1997). The proper standard of review governing the denial of a motion for a mistrial “where the trial court recognized the error, sustained the objection and gave a curative instruction” is an abuse of discretion — not fundamental error. See Chamberlain v. State, 881 So.2d 1087, 1098 (Fla.2004).
As to the impermissible imaginary-script and denigration-of-mitigation arguments, the majority summarily concludes that these claims of error were insufficiently preserved because defense counsel’s objections were based on “nonspecific” statements of “improper argument.” Majority op. at 849-50, 854-55. Although I agree that “objections must be made with sufficient specificity to apprise the trial court of the potential error and to preserve the portion for appellate review,” Ferguson v. State, 417 So.2d 639, 641 (Fla.1982), I do not believe that an “improper argument” objection will always be insufficient to apprise the court of the potential error. See, e.g., Thomas v. State, 326 So.2d 413, 414-15 (Fla.1975) (reviewing claim of prosecu-torial misconduct on the basis of defense counsel’s “improper argument” objections). This is especially so when the objected-to *872 improper argument is one this Court has previously condemned. Trial judges — to whom we commend “the vigilant exercise of their responsibility to insure a fair trial” — have “a crucial role in ensuring that lawyers do not exceed the bounds of proper advocacy.” Gore v. State, 719 So.2d 1197, 1202 (Fla.1998) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)).
The Court cannot ignore the context within which the objection was made. As to closing arguments in particular, any unbending rule that requires more than what is required to alert the trial judge to the impropriety is unnecessary:
“Under the contemporaneous objection rule, an issue is properly preserved if the trial court knows that an objection was made, clearly understands the nature of the objection, and denies that request.” Ferguson v. Secreta'ry for Dep’t. of Corrs., 580 F.3d 1183, 1212 (11th Cir.2009) (citing Thomas v. State, 419 So.2d 634, 636 (Fla.1982)). Additionally, courts have avoided the necessity of magic words when stating an objection as long as counsel articulates the objection with sufficient specificity as “to inform the trial judge of the alleged error.” Ferguson, 580 F.3d at 1212 (citing Williams v. State, 414 So.2d 509, 512 (Fla.1982)).
Richemond v. State, — So.3d -, -(Fla. 3d DCA 2011) (first emphasis added). Thus, where defense counsel objects to prosecutorial misconduct on the grounds of “improper argument,” but it is obvious from the record that the trial judge clearly understood the nature of the objection, I would conclude that the objection is sufficiently specific to preserve the closing argument issue for appeal.[17]
The prosecutor’s improper imaginary script argument occurred before any objection on the basis of the golden rule, and I therefore agree that this argument was not sufficiently objected to or preserved. My review of the record leads me to a different conclusion, however, with respect to the prosecutor’s denigration-of-mitigation arguments. At that point during the closing argument, the prosecutor was focused on impugning the mitigation, and defense counsel repeatedly objected to the prosecutor’s inappropriate characterizations. And, when defense counsel moved for a mistrial at the conclusion of the prosecutor’s arguments, it was clear the trial judge understood the basis for this claim of error. Therefore, I would conclude defense counsel’s objections to the prosecutor’s repeated denigration of mitigation were specific enough to preserve this issue for review. Because the trial court failed to recognize the error and improperly overruled the objection, this Court should review the comments for harmless error and the denial of mistrial for an abuse of discretion. See Belcher v. State, 961 So.2d 239, 255 (Fla.2007).
With respect to the remainder of the prosecutor’s improper commentary, I agree any error was not preserved for appellate review. Yet, when determining whether to reverse for a new penalty phase, this Court on appeal must review “the entire closing argument with specific attention to the objected-to arguments and the unobjected-to arguments.” Card v. *873 State, 808 So.2d 613, 622 (Fla.2001) (emphasis added). The Court does “not examine allegedly improper comments in isolation. Rather, the Court examines the totality of the errors in the closing argument and determines whether the cumulative effect of the numerous improprieties deprived the defendant of a fair penalty-phase [proceeding].” Id.; see also Merck, 975 So.2d at 1061 (“The Court considers the cumulative effect of objected-to and unobjected-to comments when reviewing whether a defendant received a fair trial.”).
Over the past decade, this Court has seen great improvement in the closing arguments of prosecutors. But this Court must continue to emphasize that “[a]l-though prosecutors have an awesome responsibility and the facts of the crime often inspire righteous indignation, they are also officers of the court who have duties to both ‘refrain from improper .methods calculated to produce a wrongful conviction’ and ‘to use every legitimate means to bring about a just one.’ ” Salazar v. State, 991 So.2d 364, 383 (Fla.2008) (Pariente, J., specially concurring) (quoting Gore, 719 So.2d at 1202); see also Wade, 41 So.3d at 881 (Pariente, J., specially concurring, with three other Justices concurring) (stating the same). While attorneys are permitted wide latitude in closing arguments, limitations do exist. See Gore, 719 So.2d at 1200-02.
With regard to penalty-phase proceedings in particular,
[t]hese admonitions are especially important ... [because] often the nature of the crime, coupled with images of the victim being viciously murdered, makes the concept of mitigation difficult for the jury to accept. That is why it is critical that the prosecutor, as an officer of the court, not make arguments that are inflammatory, especially ones that suggest that the death penalty should be imposed simply because the defendant killed another human being. That is not the law in this State or in this country, as repeatedly spelled out by the United States Supreme Court decisions both interpreting the death penalty in light of the Eighth Amendment’s prohibition against cruel and unusual punishment and recognizing the importance of mitigation in death penalty proceedings. The Constitution requires individualized sentencing in capital cases in which the circumstances of each case and each individual defendant must be considered. See Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
Merck, 975 So.2d at 1068 (Pariente, J., dissenting).
As reflected above, the improper commentary that permeated the prosecutor’s closing argument in this ease included denigration of Braddy’s defense lawyer and his mitigation, blatant appeals to the jurors’ emotions, prohibited golden rule arguments, improper vouching for the State seeking the death penalty, and essentially instructing the jury not to take the easy way out by recommending a life sentence. After reviewing the entire closing argument, mindful of the different standards of review at play, I must conclude that the cumulative effect of the numerous improprieties deprived Braddy of a fair penalty-phase proceeding. Accordingly, I respectfully dissent.
QUINCE, J., concurs.

. The defense did not object to these comments, and while not an excuse for the defense counsel failing to object, it is possible that counsel may have been reluctant to continue to object after his objections to several other clearly impermissible arguments were immediately overruled.

. Defense counsel did not object to this comment, but it again bears emphasizing that this comment was made after one of defense counsel's meritorious objections had been overruled by the trial court.

. In denying Braddy’s motion for mistrial, the trial court explained that it was caught "on time” and "by giving that instruction to the jury that they must disregard the last statement of the prosecutor and sustaining the objection, I think that we dissipated any negative effect it might have had.”

. In recounting the evidence during the guilt-phase closing, the prosecutor repeatedly used the personal pronoun "you” instead of "she,” thereby placing the jurors in the victim’s position:
You’re five. You’d just seen what he’s done to your mother. You’re falling out of a moving car, you're five and it's dark. That’s terrifying.
[[Image here]]
These comments were unquestionably impermissible.

. Braddy did not object to this remark.

. In fact, the majority tacitly embraces this principle when discussing Braddy’s claim about improper vouching. Defense counsel first objected on the specific grounds of improper vouching. However, when the trial court overruled the objection, the State continued and defense counsel then objected on the basis of "improper argument,” to which the court responded with "[m]ove on to what you expect the evidence showed.” Given the context, the majority does not conclude that defense counsel's use of the phrase "improper argument” failed to preserve the issue.